UNITED STATES EX REL. CHICAGO, NEW YORK & BOSTON REFRIGERATOR COMPANY *v.* INTERSTATE COMMERCE COMMISSION.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 288.  Argued May 2, 1924.—Decided May 26, 1924.

A car company whose business consists in leasing its refrigerator cars to railroads on a car-mile basis, and which solicits freight, but which does not control or use the facilities necessary for performing carriage, or hold itself out to perform carriage by publishing rates therefor, or receive compensation from shippers whose shipments move in its cars, is not a " carrier by railroad," within the meaning of § 209 of the Transportation Act, 1920, which made a guaranty of income for six months after March 1, 1920, with respect to any carrier by railroad with which a contract had been made fixing the amount of just compensation under the Federal Control Act.  P. 293.

288 Fed. 649; 53 App. D. C. 111, affirmed.

Error to a judgment of the Court of Appeals of the District of Columbia, which affirmed a judgment of the Supreme Court of the District dismissing a petition for mandamus.

*Mr. William G. Wheeler* and *Mr. Edward M. Hyzer* for plaintiff in error.

*Mr. J. Carter Fort,* with whom *Mr. P. J. Farrell* was on the brief, for the Interstate Commerce Commission.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

By § 209 (c) of Transportation Act, 1920, c. 91, 41 Stat. 456, 464, the United States guarantees, for a period of six months after March 1, 1920, with respect to any car-

rier with which a contract has been made fixing the amount of just compensation under the Federal Control Act, that the railway operating income of such carrier as a whole shall not be less than one-half the amount named in such contract as annual compensation.

By the same section, subdivision (a), the term " carrier " is defined to mean, "(1) a carrier by railroad or partly by railroad and partly by water, whose railroad or system of transportation is under Federal control at the time Federal control terminates, . . . and (2) a sleeping car company whose system of transportation is under Federal control at the time Federal control terminates. . . ."

By subdivision (g), p. 466, the Interstate Commerce Commission is directed to " ascertain and certify to the Secretary of the Treasury the several amounts necessary to make good the foregoing guaranty to each carrier."

On March 15, 1920, plaintiff in error, hereafter called the Car Company, filed with the Commission its written acceptance of the provisions of § 209, and at a later time applied to the Commission for the ascertainment and certificate mentioned in subdivision (g). The Commission denied the application upon the ground that the Car Company was not a carrier within the meaning of the act. Thereupon, a mandamus was sought from the Supreme Court of the District of Columbia, to compel the Commission to comply with the provisions of subdivision (g), but that court, after a hearing, discharged the rule and dismissed the petition. Upon appeal to the Court of Appeals this judgment was affirmed. 288 Fed. 649.

The single question presented is whether the Car Company is a " carrier by railroad." Immediately prior to federal control, the Car Company owned 1340 refrigerator cars, which were operated over various lines of railroad under contracts with the railroad companies.

The Car Company did not own or control any railroad property or facilities, aside from these cars. The contracts provided for payment of compensation for the use of the cars by the railroad companies on the basis of mileage—that is, a fixed sum for each mile over which the cars were run. The cars were under the control of the railroad companies, subject to the observance, on their part, of the directions of the Car Company as to the distribution of the cars. The Car Company solicited freight from shippers, for which it was generally paid commissions; and exercised a degree of supervision over the shipment. Sometimes cars containing shipments were delivered by non-contract railroads, from which the Car Company received payment of the mileage charges. Bills of lading covering shipments were generally made by the railroad companies; but a small percentage, perhaps ten per centum, of the shipments originating west of Chicago were re-billed on the forms of the Car Company, subject to tariffs and classifications of the railroad companies then in effect. Way bills were made out by the railroad companies; and all freight charges were paid to the railroad companies, no payment for transportation being made by the shippers to the Car Company. The Car Company was incorporated to manufacture, sell or rent freight cars, rolling stock and for other specified purposes; but nothing is said in its articles of incorporation in respect of any operation as a carrier. It filed no tariffs with the Commission, as interstate railroad carriers are required to do; nor did it keep its accounts in accordance with the rules of the Commission. The refrigerator cars were taken over and used by the Director General of Railroads during the period of federal control and compensation therefor paid to the Car Company. Upon the expiration of such control the cars were surrendered to the Car Company. The court below accurately summarized the testimony as showing, " that the Refrigerator Company is not

incorporated as a carrier, does not control or use the necessary facilities for performing carriage, does not hold itself out to perform carriage by publishing rates applicable thereto, and does not in fact perform carriage or receive any compensation from shippers whose shipments move in its cars. The cars are rented to railroad companies. They are subject to the control of the latter and are to all intents and purposes their property during the period of the lease. In a word, the Refrigerator Company carries nothing."

In *Wells Fargo & Co.* v. *Taylor,* 254 U. S. 175, 187–188, this Court defined the words "common carrier by railroad," as used in the Employers' Liability Act of April 22, 1908, c. 149, 35 Stat. 65, to mean "one who operates a railroad as a means of carrying for the public,—that is to say, a railroad company acting as a common carrier." If this definition be applied here, it disposes of the question against the contention of the Car Company, since it is plain that it does not operate a railroad—that is, it is not a railroad company acting as a common carrier. The contention, however, is that this definition was confined to the words as used in the Employers' Liability Act, and that they are used in the Transportation Act in a different sense. It is quite true that because words used in one statute have a particular meaning they do not necessarily denote an identical meaning when used in another and different statute. But in the *Taylor Case,* the definition was not made to rest upon any peculiarity in the act under review, but was said to be "in accord with the ordinary acceptation of the words," and this ordinary meaning was enforced by a consideration of certain provisions of the act, which were enumerated.

In *Ellis* v. *Interstate Commerce Commission,* 237 U. S. 434, 443-444, it was held that the Armour Car Lines, which owned, manufactured and maintained refrigerator, tank and box cars, and let them to railroads or to ship-

pers, was not a common carrier subject to the Act to
Regulate Commerce, § 12, c. 104, 24 Stat. 379, 383.   The
facts in respect of ownership of cars, use, relation to the
railroads, etc., were much the same as those in the present
case.   After reciting them, this Court said: " It has no
control over motive power or over the movement of the
cars that it furnishes as above, and in short, notwith-
standing some argument to the contrary, is not a common
carrier subject to the act.   It is true that the definition
of transportation in § 1 of the act includes such instru-
mentalities as the Armour Car Lines lets to the railroads.
But the definition is a preliminary to a requirement that
the carriers shall furnish them upon reasonable request,
not that the owners and builders shall be regarded as car-
riers, contrary to the truth.   The control of the Commis-
sion over private cars, &c., is to be effected by its control
over the railroads that are subject to the act.   The rail-
roads may be made answerable for what they hire from
the Armour Car Lines, if they would not be otherwise,
but that does not affect the nature of the Armour Car
Lines itself."   We need not review the arguments and
contentions made here to the contrary.   It is enough to
say, that under the facts the Car Company is not a car-
rier by railroad, or, indeed, a common carrier at all, within
the ordinary acceptation of the words, and there is noth-
ing in the terms of the Transportation Act which sug-
gests a different view.   Such inferences as are to be
drawn from the provisions of the act, as pointed out by
the court below, are the other way.   The guaranty itself
is in respect " of railway operating income."   The Car
Company's income may be " operating income " but cer-
tainly it is not " *railway* operating income."   The income
arises not from operating a railway but from the use of
facilities let to the railway companies for fixed compensa-
tion.   Stress is laid on the assertion that there is no spe-
cific language in the contracts, except in one instance, to

the effect that the cars are leased. It is not necessary that there should be. In pursuance of the contracts the cars were delivered to, operated and controlled and their use as instrumentalities of transportation paid for by, the railroads. This is enough to establish a letting for hire; and there is nothing in the contracts or in any of the details of their performance which requires a different conclusion.

If the Car Company is a carrier by railroad, it would seem to follow that sleeping car companies and express companies are likewise included within the words. Evidently, however, Congress did not think so, since § 209 of the act contains special provisions in respect of these companies, which would have been entirely unnecessary if they had been so included. The contention that the Car Company, if not a carrier by railroad, is a " system of transportation " and hence within the words of the statutory definition, may be readily disposed of. The phrase forms part of the definition: " a carrier by railroad or partly by railroad and partly by water, whose railroad or system of transportation is under Federal control," etc. It is plain that the words " whose railroad or system of transportation " etc., are not to be read independently but as qualifying the language immediately preceding; and they are to be taken distributively as though the clause had read " a carrier by railroad, whose railroad is under Federal control, or, a carrier partly by railroad and partly by water, whose system of transportation is under Federal control."

It follows that the judgment of the lower court is right and it is

*Affirmed.*