**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

TINA MICHELLE NADER,
          *Defendant-Appellant.*

No. 07-30311

D.C. No.
CR-06-00106-RFC

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

MARILYN LAKE,
          *Defendant-Appellant.*

No. 07-30316

D.C. No.
CR-06-00106-
RFC-02

OPINION

Appeal from the United States District Court
for the District of Montana
Richard F. Cebull, District Judge, Presiding

Submitted July 8, 2008*
Seattle, Washington

Filed September 5, 2008

Before: Kim McLane Wardlaw, Richard R. Clifton, and
N. Randy Smith, Circuit Judges.

Opinion by Judge Clifton

*The panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2)(C).

12351

**COUNSEL**

Nathan J. Hoines, Hoines Law Office, Great Falls, Montana, for defendant-appellant Tina Nader.

Mark S. Werner, Federal Defenders of Montana, Billings, Montana, for defendant-appellant Marilyn Lake.

Kurt G. Alme, Assistant United States Attorney, Billings, Montana, for the plaintiff-appellee.

**OPINION**

CLIFTON, Circuit Judge:

Tina Nader and Marilyn Lake, operators of a prostitution business, appeal their convictions for violating the Travel Act, 18 U.S.C. § 1952. Among other things, the Travel Act prohibits the use of "any facility in interstate or foreign commerce"

with intent to further certain unlawful activity, including prostitution.[1] Nader and Lake used telephones to conduct their unlawful prostitution business, but there is no evidence of any calls that crossed state lines. This presents the question whether telephone calls within a single state—intrastate rather than interstate calls—can violate the Travel Act.

Nader and Lake argue that the facility at issue must actually be used in interstate commerce in order to violate the Travel Act. In support of this position, they argue that Congress showed its intent to require actual interstate activity by drafting the Travel Act to prohibit the use of "any facility *in* interstate or foreign commerce" rather than the use of "any facility *of* interstate or foreign commerce." They also argue that their conduct falls outside the Travel Act's primary legislative purpose, which was to target organized crime, particularly crime bosses who supervise illegal activities in one state while residing in another. The government responds that Nader and Lake's interpretation is at odds with the plain meaning of the Travel Act because the phrase "in interstate or foreign commerce" plainly modifies the word "facility," not the word "uses." The government also argues that Congress intended the terms "in" and "of" to be interchangeable, since it used them interchangeably in the related federal murder-for-hire statute.

---

[1]The Travel Act provides:

> *Whoever* travels in interstate or foreign commerce or *uses the mail or any facility in interstate or foreign commerce*, with intent to . . . otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and thereafter performs or attempts to perform . . . [such] an act . . . shall be fined under this title, imprisoned . . . or both . . . .

18 U.S.C. § 1952(a) (1990) (emphasis added). The Travel Act also defines "unlawful activity" to include "any business enterprise involving . . . prostitution offenses." 18 U.S.C. § 1952(b).

The government's interpretation of the Travel Act is the more sensible. We affirm Nader and Lake's convictions and hold that intrastate telephone calls made with intent to further unlawful activity can violate the Travel Act because they involve use of a facility in interstate commerce.

## I.   Background

Nader owned and operated a massage studio in Billings, Montana from 1994 to 2004, and another massage studio in Great Falls, Montana from 1993 to 2006. Lake managed the Billings studio and worked for Nader until 2003 or 2004. It is undisputed that the businesses involved prostitution. Card catalogs show that the two businesses had approximately 5000 customers from Montana and at least five other states.[2] Many of the prostitution transactions were initiated by a telephone call from the customer.

Nader and Lake were indicted for violating 18 U.S.C. §§ 1952 and 2 by using the telephone to carry on a business enterprise involving prostitution in violation of Montana Code Ann. § 45-5-601. The government notified Nader and Lake that it intended to prove that they used a "facility in interstate or foreign commerce" with evidence of only intrastate telephone calls. Nader and Lake jointly moved to dismiss the indictment, arguing that their intrastate use of the telephone was not the use of a "facility in interstate or foreign commerce" under the Travel Act. The district court denied the motion. Nader and Lake pled guilty pursuant to plea agreements in which they expressly reserved their right to appeal the denial of their joint motion to dismiss. Lake was sentenced to 30 months imprisonment and two years of super-

---

[2]While some of Nader and Lake's customers came from other states, this fact is insufficient by itself to support a violation of the Travel Act. *Rewis v. United States*, 401 U.S. 808, 811 (1971) ("But we are unable to conclude that conducting a gambling operation frequented by out-of-state bettors, by itself, violates the [Travel] Act.").

vised release. Nader was sentenced to 46 months imprisonment and two years of supervised release. Both were released pending appeal. These timely appeals followed and were consolidated.

## II.  Discussion

"We review de novo a district court's refusal to dismiss an indictment when the refusal is based on an interpretation of a federal statute." *United States v. Fitzgerald*, 147 F.3d 1101, 1102 (9th Cir. 1998) (citing *United States v. Gomez-Rodriguez*, 96 F.3d 1262, 1264 (9th Cir. 1996) (en banc)).

**[1]** Whether the Travel Act reaches intrastate telephone calls is a question of first impression in this Circuit. We note at the outset that this is a question of congressional intent, not congressional power. Nader and Lake correctly do not contest that Congress has the *power* to regulate intrastate telephone calls. In *United States v. Lopez*, the Supreme Court identified "three broad categories of activity that Congress may regulate under its commerce power." 514 U.S. 549, 558-59 (1995). Telephones are instrumentalities of interstate commerce that fall within the second *Lopez* category. *United States v. Dela Cruz*, 358 F.3d 623, 625 (9th Cir. 2004); *United States v. Clayton*, 108 F.3d 1114, 1117 (9th Cir. 1997). At issue is whether Congress *intended* to regulate intrastate telephone calls by the language it used in the Travel Act.

In answering this question, we first consider the plain meaning of the statute's text. *Jonah R. v. Carmona*, 446 F.3d 1000, 1005 (9th Cir. 2006). If the terms are ambiguous, we may look to other sources to determine congressional intent, such as the canons of construction or the statute's legislative history. *Id.* at 1005. We may consider related statutes because "statutes dealing with similar subjects should be interpreted harmoniously." *Id.* at 1007 (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 738-39 (1989) (Scalia, J., concurring)). Titles are also an appropriate source from which to discern

legislative intent. *Goodcell v. Graham*, 35 F.2d 586, 587 (9th Cir. 1929) (citing *Holy Trinity Church v. United States*, 143 U.S. 457, 462 (1892)).

A. *Whether the Facility Must Be Used in a Manner that Crosses State Lines*

**[2]** The Travel Act provides that "[w]hoever . . . uses the mail or any facility in interstate or foreign commerce" with intent to carry on unlawful activity is guilty of a crime. 18 U.S.C. § 1952(a). Nader and Lake argue that they did not violate the Travel Act because the government has not proved that any telephone calls crossed state lines. Under Nader and Lake's interpretation, the facility at issue must actually be *used* in interstate commerce, so the phrase "in interstate or foreign commerce" in the Travel Act must modify the verb "uses," not the noun "facility." But a common sense reading of the plain language of the Travel Act shows that it does not. In the predicate "uses the mail or any facility in interstate or foreign commerce," the prepositional phrase "in interstate or foreign commerce" modifies the noun "facility," not the verb "uses." Congress placed the phrase next to the word "facility," which strongly supports the conclusion that the phrase modifies that word. *See* The Chicago Manual of Style ¶ 5.167 (15th ed. 2003) ("A prepositional phrase with an adverbial or adjectival function should be as close as possible to the word it modifies to avoid awkwardness, ambiguity, or unintended meanings."); William Strunk, Jr. & E. B. White, The Elements of Style 30 (4th ed. 2000) ("Modifiers should come, if possible, next to the words they modify."). No court has held that the phrase "in interstate or foreign commerce" modifies "uses." Even the Sixth Circuit, which held that the intrastate use of the mail *cannot* support a violation of the Travel Act, based its holding on other aspects of the statute. *See United States v. Barry*, 888 F.2d 1092, 1095 (6th Cir. 1989). The plain language of the statute is unambiguous. The facility itself, not its use, must be in interstate commerce.

**[3]** The weight of authority from other circuits supports this reading. The Eighth Circuit has held that the intrastate use of an ATM is the use of a "facility in interstate or foreign commerce" under the Travel Act. *United States v. Baker*, 82 F.3d 273, 275 (8th Cir. 1996). This holding is possible only if the word modified is "facility." The Second and Fifth Circuits have held that the intrastate use of the mail can support a violation of the Travel Act. *United States v. Heacock*, 31 F.3d 249, 255 (5th Cir. 1994); *United States v. Riccardelli*, 794 F.2d 829, 830 (2d Cir. 1986). Both cases involved the pre-1990 version of the Travel Act, which prohibited the use of "any facility in interstate or foreign commerce, including the mail." Both concluded based on this language that the mail is a facility in interstate commerce. If the intrastate use of the mail can violate the Travel Act, and the mail is a facility in interstate commerce, then the intrastate use of a facility in interstate commerce can violate the Travel Act. This is possible only if the word modified is "facility."**³** While these cases involve facilities other than the telephone, their holdings require a grammatical construction of the Travel Act that forecloses Nader and Lake's interpretation. That the cases arise under different circumstances does not render them any less applicable here, since the phrase "in interstate or foreign commerce" modifies the same word no matter the facts of the case.

**[4]** While the statutory language is unambiguous, we observe that three circuits, including the Sixth, have explicitly concluded that the phrase modifies "facility" when construing nearly identical language in the related murder-for-hire statute.**⁴**

---

**³**The 1990 amendment to the Travel Act, which was entitled "clarification of applicability of [the Travel Act] to all mailings in furtherance of unlawful activity," made clear that intrastate mailings can violate the Travel Act. Pub. L. No. 101-647, tit. XVI, sec. 1604, 104 Stat. 4789, 4843 (Nov. 29, 1990); *United States v. Marek*, 238 F.3d 310, 318 (5th Cir. 2001) (en banc).

**⁴**At the time the three cases cited above were decided, the murder-for-hire statute provided:

*See United States v. Richeson*, 338 F.3d 653, 660 (7th Cir. 2003) (holding that the intrastate use of the telephone can support a violation of the murder-for-hire statute); *United States v. Cope*, 312 F.3d 757, 771 (6th Cir. 2002) (holding that the intrastate use of the mail can support a violation of the murder-for-hire statute); *United States v. Marek*, 238 F.3d 310, 316 (5th Cir. 2001) (en banc) (holding that the intrastate use of Western Union can support a violation of the murder-for-hire statute). That the phrase modifies "facility" in the related murder-for-hire statute weighs in favor of reading the Travel Act the same way. *See Jonah R.*, 446 F.3d at 1007.

### B. Whether Intrastate Telephone Calls Involve the Use of a Facility "in" Interstate Commerce

**[5]** Nader and Lake concede that the telephone is a facility *of* interstate commerce. They argue, however, that Congress intended to require actual interstate activity by drafting the Travel Act to prohibit the use of "any facility *in* interstate or foreign commerce." 18 U.S.C. § 1952(a) (emphasis added). Several courts, including ours, have recognized a distinction between the phrases "in interstate commerce" and "of interstate commerce" in the context of other statutes. In *Spilker v. Shayne Labs., Inc.*, 520 F.2d 523, 525-26 (9th Cir. 1975), we

---

(a) *Whoever* travels in or causes another (including the intended victim) to travel in interstate or foreign commerce, or *uses* or causes another (including the intended victim) to use *the mail or any facility in interstate or foreign commerce*, with intent that a murder be committed . . . . shall be fined under this title or imprisoned . . . or both.

(b) As used in this section . . .

. . . .

(2) "*facility of interstate or foreign commerce*" includes means of transportation and communication . . . .

18 U.S.C. § 1958 (1996) (emphasis added).

joined several other circuits in holding that the intrastate use of the telephone constitutes the use of an "instrumentality of interstate commerce" under § 10 of the Securities Exchange Act of 1934 ("1934 Act"). *Spilker* contrasted the 1934 Act with the Securities Act of 1933, which contained the phrase " 'instrumentality *in* interstate commerce.' " *Id.* at 525 (emphasis added) (quoting *Dupuy v. Dupuy*, 511 F.2d 641, 642-43 (5th Cir. 1975)). *Spilker* reasoned that "a number of courts have considered use of the preposition 'of' rather than 'in' in itself highly persuasive that intrastate telephone communications are within the purview of the 1934 Act." *Id.* (quoting *Dupuy*, 511 F.2d at 642-43). The Sixth Circuit relied on a similar securities case from its circuit in concluding that intrastate mailings cannot support a violation of the Travel Act.[5] *See Barry*, 888 F.2d at 1095 (citing *Aquionics Acceptance Corp. v. Kollar*, 503 F.2d 1225, 1228 (6th Cir. 1974)); *see also United States v. De Sapio*, 299 F. Supp. 436, 448 (S.D.N.Y. 1969) (concluding that intrastate telephone calls cannot support a violation of the Travel Act).

[6] We attach no special significance to the use of the preposition "in" rather than "of" in the Travel Act. While the language may admit of some ambiguity, we decline to apply *Spilker* and the other securities cases because they construe unrelated statutes not at issue here. *See United States ex rel. Chicago, New York & Boston Refrigerator Co. v. Interstate Commerce Comm'n*, 265 U.S. 292, 295 (1924) ("[B]ecause words used in one statute have a particular meaning they do not necessarily denote an identical meaning when used in another and different statute."); *United States v. King*, 478 F.2d 494, 504 (9th Cir. 1973) ("The fact that [Congress] used

---

[5]The Fifth Circuit, construing the murder-for-hire statute, distinguished a similar securities case from its circuit and reached the opposite conclusion: that intrastate activity *can* support a violation of the Travel Act. *See Marek*, 238 F.3d at 319 n.44 (distinguishing *Dupuy*, 511 F.2d at 642-43). The Second and Seventh Circuits have adopted *Marek*'s approach. *See United States v. Perez*, 414 F.3d 302, 304-05 (2d Cir. 2005); *Richeson*, 338 F.3d at 660.

different language to achieve the same result in a totally unrelated statute is irrelevant."). Moreover, these securities cases do not construe the language that is at issue here. They do not affirmatively hold that "in interstate commerce"—the language in both the 1933 Act and the Travel Act—requires actual interstate activity. The 1934 Act was at issue in *Spilker* and the other securities cases, not the 1933 Act. The 1934 Act contains only the phrase "of interstate commerce."

[7] We look, instead, to the murder-for-hire statute, which is closely related to the Travel Act.[6] The murder-for-hire statute supports the conclusion that Congress did not intend to require actual interstate activity by using the phrase "in interstate or foreign commerce" in the Travel Act. Before it was amended in 2004, the murder-for-hire statute prohibited the use of "any facility *in* interstate or foreign commerce, with intent that a murder be committed." 18 U.S.C. § 1958(a) (1996) (emphasis added). The statute's definitional section, however, defined the phrase "facility *of* interstate or foreign commerce," language which did not appear anywhere else in the statute. 18 U.S.C. § 1958(b) (1996) (emphasis added).[7] Three circuits have concluded, based largely on this difference, that Congress intended the two phrases to be interchangeable. *See United States v. Perez*, 414 F.3d 302, 304-05

---

[6]The sequential numbering of the Travel Act, 18 U.S.C. § 1952, and the original version of the murder-for-hire statute, 18 U.S.C. § 1952A (1985), as well as their parallel language, overlapping subject matter, and legislative histories show that the murder-for-hire statute was intended to supplement the Travel Act. *See Marek*, 238 F.3d at 317 n.29 (citing *United States v. Edelman*, 873 F.2d 791, 794 (5th Cir. 1989) (quoting S. Rep. No. 98-225, at 306 (2d Sess. 1988), *reprinted in* 1984 U.S.C.C.A.N 3182, 3485)); *Riccardelli*, 794 F.2d at 833. Congress later renumbered the murder-for-hire statute, codifying it at 18 U.S.C. § 1958. *See* Pub. L. No. 100-690, tit. VII, sec. 7053(a), 102 Stat. 4181, 4402 (Nov. 18, 1988).

[7]The definitional section of the murder-for-hire statute provided: "As used in this section . . . 'facility of interstate or foreign commerce' includes means of transportation and communication . . . ." 18 U.S.C. § 1958(b) (1996).

(2d Cir. 2005) (per curiam); *Richeson*, 338 F.3d at 660; *Marek*, 238 F.3d at 313. *But see United States v. Weathers*, 169 F.3d 336, 342 (6th Cir. 1999). Any other interpretation "is difficult to square with the structure of the statute" because "[i]f the phrases have different meanings, then § 1958(b) defines a phrase with no application to the substantive offense." *Perez*, 414 F.3d at 305. That Congress intended the two phrases to be interchangeable in the murder-for-hire statute supports the view that its use of one rather than the other in the Travel Act has no special significance. *See Jonah R.*, 446 F.3d at 1007.

Congress amended the substantive section of the murder-for-hire statute to conform with its definitional section in 2004. Both sections now contain the phrase "of interstate or foreign commerce." The 2004 amendment is entitled "clarification of definition," even though it changed the substantive section of the murder-for-hire statute, not the definitional section. Pub. L. No. 108-458, tit. II, sec. 6704, 118 Stat. 3638, 3766 (Dec. 17, 2004). That Congress clarified the *definition* by changing the substantive section suggests that the content of the definitional section and the content of the substantive section were the same before the amendment, *i.e.*, that "in" and "of" were (and still are) interchangeable. If they were not, then we would expect the 2004 amendment either to have changed the definitional section rather than the substantive section, or not to have purported to be merely a clarification of the definition.

**[8]** Accordingly, intrastate telephone calls involve the use of a facility "in" interstate commerce.

### C.   *Legislative Purpose*

**[9]** Nader and Lake argue that we should construe the Travel Act narrowly because their conduct falls outside its primary legislative purpose. *See Spilker*, 520 F.2d at 525 ("It is a cardinal canon of statutory construction that statutes

should be interpreted harmoniously with their dominant legislative purpose."). The primary legislative purpose of the Travel Act was to target organized crime, particularly the "top men of organized crime" who oversee illegal activities in one state while residing in another. 107 Cong. Rec. 13942, 13943 (1961); *The Attorney General's Program to Curb Organized Crime and Racketeering: Hearings Before the Comm. on the Judiciary, United States Senate*, 87th Cong. 15-16 (1st Sess. 1961) (statement of Attorney General Robert F. Kennedy); *see Rewis v. United States*, 401 U.S. 808, 812 & n.6 (1971). No aspect of that purpose is implicated here, since Nader and Lake were involved in local prostitution businesses, not organized crime, and they did not reside out-of-state. The statute, however, is worded broadly. Its plain text prevents us from reading it to encompass only cases that involve organized crime or interstate criminal enterprises. To the extent the statute is ambiguous about whether the telephone is a facility "in" interstate commerce, the other sources of meaning discussed above weigh more heavily against a narrow construction than its legislative purpose weighs in favor of one.

## D. The Rule of Lenity

**[10]** Nader and Lake argue that we should apply the rule of lenity because the Travel Act is ambiguous. They rely in part on *Rewis*, where the Supreme Court applied the rule of lenity when construing the interstate travel aspect of the Travel Act. 401 U.S. at 812. The rule of lenity "requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." *United States v. Santos*, 128 S. Ct. 2020, 2025 (2008). The rule of lenity, however, "is rooted in fundamental principles of due process which mandate that no individual be forced to speculate, at peril of indictment, whether his conduct is prohibited." *Dunn v. United States*, 442 U.S. 100, 112 (1979). Nader and Lake were not "forced to speculate" because they knew that their conduct was illegal. *Accord Marek*, 238 F.3d at 322.

**[11]** The rule of lenity applies only where "after seizing every thing from which aid can be derived, the Court is left with an ambiguous statute." *Smith v. United States*, 508 U.S. 223, 239 (1993) (refusing to apply rule of lenity where defendant had been convicted of using a firearm in the commission of a drug trafficking crime, but used the firearm only for barter, not as a weapon) (internal quotation marks omitted). The language of the statute must be "grievously ambiguous." *United States v. Devorkin*, 159 F.3d 465, 469 (9th Cir. 1998) (citing *Chapman v. United States*, 500 U.S. 453, 463 (1991)). We have resolved any ambiguity about the portions of the Travel Act at issue here with the aid of the related murder-for-hire statute. *See Marek*, 238 F.3d at 322. This case is therefore unlike *Rewis*, 401 U.S. at 812, which involved an aspect of the Travel Act not at issue here.

## E. Federalism

**[12]** Nader and Lake argue that interpreting the Travel Act broadly offends principles of federalism. "[I]f Congress intends to alter the usual constitutional balance between the States and the Federal Government, it must make its intention to do so unmistakably clear in the language of the statute." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989) (internal quotation marks omitted). Nader and Lake argue that the Travel Act is not unmistakably clear, and that interpreting it broadly enough to encompass their conduct would alter this delicate balance. The Travel Act establishes only concurrent federal jurisdiction over what are already state or local crimes, however. *See Marek*, 238 F.3d at 323 (quoting S. Rep. No. 98-225, at 304-05 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3484). The federal government cannot usurp state authority via the Travel Act because a state must first decide that the conduct at issue is illegal. The Travel Act also does not render state or local law enforcement agencies any less able to fight crime; it supplements, not supplants, their capabilities. While there may be valid questions as to the wisdom of drafting such a broad statute or applying it in the context

of local prostitution businesses like the ones in this case, these are policy issues within the discretion of the other branches. They raise no federalism concerns.

## III.   Conclusion

We hold that intrastate telephone calls made with intent to further unlawful activity can violate the Travel Act because the telephone is a facility in interstate commerce.

**AFFIRMED.**