FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| CONFEDERATED TRIBES AND BANDS OF THE YAKAMA NATION, a sovereign federally recognized Native Nation,<br><br>*Plaintiff-Appellant*,<br><br>v.<br><br>YAKIMA COUNTY, a political subdivision of the State of Washington; CITY OF TOPPENISH, a municipality of the State of Washington,<br><br>*Defendants-Appellees*. | No. 19-35199<br><br>D.C. No. 1:18-cv-03190-TOR<br><br>OPINION |

Appeal from the United States District Court
for the Eastern District of Washington
Thomas O. Rice, Chief District Judge, Presiding

Argued and Submitted March 3, 2020
Seattle, Washington

Filed June 29, 2020

Before: Sandra S. Ikuta, Ryan D. Nelson, and
Danielle J. Hunsaker, Circuit Judges.

Opinion by Judge R. Nelson

# SUMMARY[*]

## Tribal Jurisdiction

Affirming the district court's judgment in favor of Yakima County, Washington, and the City of Toppenish, the panel held that the State of Washington may exercise criminal jurisdiction over members of the Confederated Tribes and Bands of the Yakama Nation who commit crimes on reservation land.

The panel held that the Yakama Nation had Article III standing to seek a permanent injunction regarding the effect of a Washington State Proclamation retroceding, or giving back, criminal jurisdiction to the United States. The panel concluded that the asserted injury of infringement on the Yakama Nation's tribal sovereignty and right to self-government as guaranteed by treaty was sufficiently concrete, particularized, and imminent to show injury in fact.

The panel addressed only the "actual success on the merits" element of the Yakama Nation's request for a permanent injunction. Pursuant to 25 U.S.C. § 1323(a), the Proclamation retroceded, "in part," civil and criminal jurisdiction over the Yakama Nation to the United States, but retained jurisdiction over matters "involving non-Indian defendants and non-Indian victims." The panel concluded, based on the entire context of the Proclamation, that "and" as used in the above sentence was disjunctive and should be

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

read as "or."  Accordingly, the State retained jurisdiction if any party is a non-Indian.

## COUNSEL

Anthony S. Broadman (argued) and Joe Sexton, Galanda Broadman, Seattle, Washington; Ethan Jones, Marcus Shirzad, and Shona Voelckers, Yakama Nation Office of Legal Counsel, Toppenish, Washington; for Plaintiff-Appellant.

Kirk A. Ehlis (argued), Menke Jackson Beyer LLP, Yakima, Washington, for Defendant-Appellee City of Toppenish.

Don L. Anderson and Paul E. McIlrath, Prosecuting Attorney, Prosecuting Attorney's Office, Yakima, Washington, for Defendant-Appellee Yakima County.

Stacy Stoller (argued), William B. Lazarus, Amber Blaha, and Rachel Heron, Attorneys; Eric Grant, Deputy Assistant Attorney General; Jeffrey Bossert Clark, Assistant Attorney General; Environment and Natural Resources Division, United States Department of Justice, Washington, D.C.; for Amicus Curiae United States of America.

Kristen Mitchell, Deputy Attorney General; Robert W. Ferguson, Attorney General; Office of the Attorney General, Olympia, Washington; for Amicus Curiae State of Washington.

**OPINION**

R. NELSON, Circuit Judge:

This case presents the question whether the State of Washington may exercise criminal jurisdiction over members of the Confederated Tribes and Bands of the Yakama Nation who commit crimes on reservation land. To answer that question, we must interpret a 2014 Washington State Proclamation that retroceded—that is, gave back—"in part," civil and criminal jurisdiction over the Yakama Nation to the United States, but retained criminal jurisdiction over matters "involving non-Indian defendants and non-Indian victims." If "and," as used in that sentence, is conjunctive, then the State retained jurisdiction only over criminal cases in which no party—suspects or victims—is an Indian. If, by contrast, "and" is disjunctive and should be read as "or," then the State retained jurisdiction if any party is a non-Indian. We conclude, based on the entire context of the Proclamation, that "and" is disjunctive and must be read as "or." We therefore affirm the district court.

## I

### A

This case concerns who—among Indians, Washington, and the United States—can exercise criminal jurisdiction over matters involving Indians on reservation land. Historically, the states have possessed criminal jurisdiction over crimes involving only non-Indians on Indian reservations. *Solem v. Bartlett*, 465 U.S. 463, 465 n.2 (1984) (recognizing state jurisdiction over "crimes by non-Indians against non-Indians . . . and victimless crimes by non-Indians") (internal citation omitted); *United States v. McBratney*, 104 U.S. 621, 624 (1881) (recognizing state

jurisdiction over crimes committed by non-Indians against non-Indians); *see also Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 212 (1978) ("Indian tribes do not have inherent jurisdiction to try and to punish non-Indians."). But criminal jurisdiction over Indians on Indian reservations has not been as constant. For much of early United States history, criminal jurisdiction over Indians on reservation land was generally concurrent between the United States and independent tribes, subject to some exceptions. *See Washington v. Confederated Bands & Tribes of the Yakima Indian Nation*, 439 U.S. 463, 470–71 (1979).

That arrangement changed in 1953, when Congress passed Public Law 280, in part to deal with what it perceived to be the "problem of lawlessness on certain Indian reservations, and the absence of adequate tribal institutions for law enforcement." *Bryan v. Itasca Cty.*, 426 U.S. 373, 379 (1976). Public Law 280 gave states the "consent of the United States" to voluntarily assume full jurisdiction over crimes and civil causes of action occurring on an Indian reservation, by state legislative act, "at such time and in such manner" as the state decided. Pub. L. 83-280, 67 Stat. 588, 590 (1953). A state could therefore decline to assume jurisdiction or assume only limited jurisdiction at its option. *Yakima Indian Nation*, 439 U.S. at 499.

Washington assumed some of this Public Law 280 jurisdiction in 1963. Wash. Rev. Code § 37.12.010. The State's assumption of jurisdiction depended on the place of the offense and the persons involved. *Id.* For offenses committed by Indians on trust land within a tribe's reservation, the State assumed jurisdiction as to eight subject matter areas: compulsory school attendance, public assistance, domestic relations, mental illness, juvenile delinquency, adoption proceedings, dependent children, and

operation of motor vehicles. *Id.*[1] But as to reservation lands held in fee, the State assumed criminal and civil jurisdiction for offenses committed by or against Indians, *see Yakima Indian Nation*, 439 U.S. at 475–76,[2] which represented an addition to the jurisdiction the State already had over crimes involving only non-Indians on reservation land, *Oliphant*, 435 U.S. at 212. Based on this legislation, the State had the same jurisdiction on fee lands within Indian reservations as it had anywhere else within Washington's borders. Wash. Rev. Code § 37.12.030.

Five years later, Congress authorized any state to voluntarily give up "all or any measure of the criminal or civil jurisdiction, or both," that it had acquired pursuant to Public Law 280—a process called "retrocession." 25 U.S.C. § 1323(a). The President delegated the authority to accept such a retrocession to the Secretary of the Interior, in consultation with the Attorney General. *See* Designating the Secretary of the Interior to Accept on Behalf of the United States Retrocession by Any State of Certain Criminal and Civil Jurisdiction Over Indian Country, 33 Fed. Reg. 17339-01 (Nov. 23, 1968).

Washington did not elect to retrocede any jurisdiction to the United States for several decades. But in 2012,

---

[1] The Yakama Nation reassumed jurisdiction over two of these eight areas—adoption proceedings and dependent children—under the Indian Child Welfare Act, Pub. L. 95-608, 92 Stat. 3069 (1978), in 1980. Those areas are not relevant to this appeal.

[2] Reservation land may include both land held in trust, as well as land held in fee. Trust lands are those lands that the United States "holds in trust for an Indian tribe." *Penobscot Indian Nation v. Key Bank of Maine*, 112 F.3d 538, 546 (1st Cir. 1997). Fee lands, by contrast, are lands owned by parties other than the United States. *Id.*

Washington codified a process for retrocession, which is defined as "the state's act of returning to the federal government" the jurisdiction obtained "under federal Public Law 280." Wash. Rev. Code §§ 37.12.160(9)(a)–(b). Through this process, a tribe can request, via a petition, that Washington retrocede its Public Law 280 jurisdiction to the United States. *Id.* § 37.12.160(2). The State may then "approv[e] the request either in whole or in part." *Id.* § 37.12.160(4). If the request is approved, the Governor must issue a proclamation. *Id.* The proclamation becomes effective only once it is approved by the Secretary of the Interior, in consultation with the Attorney General. *Id.* § 37.12.160(6); 33 Fed. Reg. at 17339.

The Yakama Nation availed itself of this process by filing a retrocession petition in July 2012. In its petition, the Yakama Nation requested, "pursuant to RCW 37.12," full "retrocession of both civil and criminal jurisdiction on all Yakama Nation Indian country"—that is, the full jurisdiction Washington had assumed on fee lands. The Yakama Nation also requested that full jurisdiction be retroceded on all but one of the remaining categories covering lands held in trust—"mental illness."

In early 2014, Governor Jay Inslee issued a three-page Proclamation regarding the Yakama Nation's petition. The Proclamation recognized that the Yakama Nation was requesting full retrocession of civil and criminal jurisdiction obtained "under federal Public Law 280," other than over issues relating to "mental illness" or "civil commitment of sexually violent predators"[3] "both within and without the

---

[3] The State cannot, under its own retrocession procedures, retrocede jurisdiction "over the civil commitment of sexual violent predators." Wash. Rev. Code § 37.12.170(1).

external boundaries of the Yakama Reservation." But the Proclamation only granted the Yakama Nation's request "in part." "Outside the exterior boundaries of the Yakama Reservation," Washington did not retrocede any jurisdiction. Within "the exterior boundaries," the Proclamation "grant[ed] in part" the following:

> 1. Within the exterior boundaries of the Yakama Reservation, the State shall retrocede full civil and criminal jurisdiction in the following subject areas of RCW 37.12.010: Compulsory School Attendance; Public Assistance; Domestic Relations; and Juvenile Delinquency.

> 2. Within the exterior boundaries of the Yakama Reservation, the State shall retrocede, in part, civil and criminal jurisdiction in Operation of Motor Vehicles on Public Streets, Alleys, Roads, and Highways cases in the following manner: Pursuant to RCW 37.12.010(8), the State shall retain jurisdiction over civil causes of action involving non-Indian plaintiffs, non-Indian defendants, and non-Indian victims; the State shall retain jurisdiction over criminal offenses involving *non-Indian defendants and non-Indian victims*.

> 3. Within the exterior boundaries of the Yakama Reservation, the State shall retrocede, in part, criminal jurisdiction over all offenses not addressed by Paragraphs 1 and 2. The State retains jurisdiction over

criminal offenses involving *non-Indian defendants and non-Indian victims*.

(Emphasis added).[4]

The State then sent the Proclamation to the Department of Interior ("DOI") with an accompanying cover letter from Governor Inslee. In the cover letter, the Governor asked DOI to accept the retrocession. But the Governor's letter also went a step further by attempting to clarify language in the Proclamation. According to the Governor's letter, the usage of "and" in Paragraphs 2 and 3 to describe the parties over which the State retained jurisdiction—like, for example, the phrase "non-Indian defendants and non-Indian victims" in Paragraph 3—was intended to mean "and/or," not just "and." The letter asked DOI to make this intent "clear in the notice accepting the retrocession Proclamation."

DOI accepted the State's retrocession per the Governor's request. *See* Acceptance of Retrocession of Jurisdiction for the Yakama Nation, 80 Fed. Reg. 63583-01 (Oct. 20, 2015). But DOI's published acceptance simply acknowledged that the United States was accepting "partial civil and criminal jurisdiction over the Yakama Nation which was acquired by the State of Washington under [Public Law 280]," without addressing the Governor's proposal. *Id.* A letter sent to the Yakama Nation the same day as the acceptance did address the Governor's proposal, however. Rather than opine on which interpretation was correct, DOI stated that the Proclamation was "plain on its face and unambiguous" and

---

[4] The Proclamation does not mention the status of the land—that is, whether it was held in fee or in trust; instead, it focuses on the "exterior boundaries of the Yakama Reservation."

that if a disagreement developed "as to the scope of the retrocession," a court could "provide a definitive interpretation of the plain language of the Proclamation." The retrocession became effective several months later, on April 19, 2016.  80 Fed. Reg. at 63583.

Since this time, various interpretations of the Proclamation have been offered.  The day before retrocession became effective, the United States Attorney for the Eastern District of Washington sent an email to various state and federal officials taking the position that the State retained jurisdiction only over criminal actions in which no party is an Indian.  Then, in November 2016, DOI's Principal Deputy Assistant Secretary for Indian Affairs took the same position, without any substantive analysis, in a memorandum titled "Guidance to State, Local, and Tribal Law Enforcement Agencies on Yakama Retrocession Implementation."

Almost two years later, in March 2018, the Washington Court of Appeals interpreted the text of the Proclamation and reached the opposite conclusion—that when the Proclamation is considered as a whole, the use of "and" in Paragraph 3 means "or."  *State v. Zack*, 413 P.3d 65, 69–70 (Wash. Ct. App. 2018), *review denied*, 425 P.3d 517 (2018). Then, a few months after the *Zack* decision, the United States Department of Justice's Office of Legal Counsel ("OLC") sent a 17-page memorandum to DOI analyzing the historical background of retrocession and concluding, based on the text and context of the Proclamation as well as extrinsic evidence, that "and," when considered with the "in part" language in Paragraphs 2 and 3, must mean "or."  DOI eventually rescinded the 2016 DOI guidance and replaced it with the OLC memorandum.

**B**

Before long, the dispute concerning the scope of retrocession as set forth in the Proclamation came to a head. In September 2018, police officers for the City of Toppenish—which is located within the exterior boundaries of the Yakama Indian Reservation and within Yakima County, Washington—were investigating a stolen "bait car" owned by the County. They tracked the car to an address located both within the City and the Reservation, requested assistance, and Yakama Nation police officers responded to the scene.

Upon arrival, only the passenger of the car was there, and she identified herself as a member of the Yakama Nation. Despite objections from the Yakama Nation officers that the Toppenish officers had no jurisdiction because the passenger was a member of the Yakama Nation, the Toppenish officers arrested the passenger and questioned her at the Toppenish police station. The Toppenish officers also searched the nearby home, which was owned by a member of the Yakama Nation. They then obtained a search warrant to do a further search of the home, over objections from the Yakama Nation police officers that there was no probable cause to do so.

The next month, the Yakama Nation filed suit against the City of Toppenish and Yakima County (the "Defendants"). In its complaint, the Yakama Nation challenged the State's jurisdiction, pursuant to the retrocession, over criminal matters involving Indians. Specifically, the Yakama Nation sought a declaration that "Defendants do not have criminal jurisdiction over alleged crimes occurring within the Yakama Reservation when either the defendant or the victim are an Indian." The Yakama Nation also sought "a preliminary and permanent injunction" "enjoining Defendants from exercising criminal jurisdiction over

alleged crimes occurring within the Yakama Reservation whenever either the defendant or victim are Indian."

Two months later, the Yakama Nation filed a motion for a preliminary injunction, which was converted to a motion for a permanent injunction with the parties' consent. The district court held that the Yakama Nation had Article III standing. The court held, however, that the Yakama Nation had not shown "actual success on the merits" because the Proclamation's retrocession of criminal jurisdiction "in part" would not make sense if the State had "retroceded all criminal jurisdiction assumed under Public Law 280," as the Yakama Nation argued. The district court therefore denied the permanent injunction and entered judgment, and this appeal followed.

## II

We first address Article III standing, which we review de novo. *Arakaki v. Lingle*, 477 F.3d 1048, 1056 (9th Cir. 2007). To establish standing, a plaintiff must demonstrate "(1) a concrete and particularized injury that is 'actual or imminent, not conjectural or hypothetical'; (2) a causal connection between the injury and the defendant's challenged conduct; and (3) a likelihood that a favorable decision will redress that injury." *Pyramid Lake Paiute Tribe of Indians v. Nev. Dep't of Wildlife*, 724 F.3d 1181, 1187 (9th Cir. 2013) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). At the pleading stage, we "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party," *Warth v. Seldin*, 422 U.S. 490, 501 (1975), to determine whether the nonmoving party has "clearly allege[d] facts demonstrating" each element of standing, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (internal quotations marks and alterations omitted).

The Yakama Nation has met this standard here. The injury it asserts—infringement on its tribal sovereignty and right to self-government as guaranteed by treaty—is sufficiently concrete, particularized, and imminent to show injury in fact. *Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation*, 425 U.S. 463, 468–69 & n.7 (1976) (recognizing a "discrete claim of injury" to "tribal self-government" sufficient to "confer standing" in a case involving Montana's imposition of taxes on "motor vehicles owned by tribal members residing on the reservation"); *see also Mashantucket Pequot Tribe v. Town of Ledyard*, 722 F.3d 457, 464 (2d Cir. 2013) (finding injury in fact based on "measurable interference in the Tribe's sovereignty on its reservation"). Moreover, the claimed injury is "fairly traceable" to the Defendants and "likely to be redressed" by an injunction prohibiting Defendants from exercising criminal jurisdiction over Indians or by a definitive interpretation of the Proclamation. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014). The Yakama Nation therefore has Article III standing.

## III

Next, we address the district court's decision to deny the Yakama Nation's request for a permanent injunction. To be entitled to a permanent injunction, a plaintiff must demonstrate (1) "actual success on the merits"; (2) "that it has suffered an irreparable injury"; (3) "that remedies available at law are inadequate"; (4) "that the balance of hardships justify a remedy in equity"; and (5) "that the public interest would not be disserved by a permanent injunction." *Indep. Training & Apprenticeship Program v. Cal. Dep't of Indus. Relations*, 730 F.3d 1024, 1032 (9th Cir. 2013). Here, we need only address the "actual success on the merits" element—specifically, the scope of retrocession based on

our interpretation of the Proclamation—and we review the district court's legal conclusions as to that interpretation de novo. *Ting v. AT&T*, 319 F.3d 1126, 1134–35 (9th Cir. 2003) (holding that "any determination underlying the grant of an injunction" is reviewed "by the standard that applies to that determination"); *Artichoke Joe's Cal. Grand Casino v. Norton*, 353 F.3d 712, 719 (9th Cir. 2003) (noting that "questions of statutory interpretation" are reviewed de novo).

Our de novo review is informed by well-established rules of interpretation.[5]    First, we "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). This determination is made "by reference to the language itself, the specific context in which that language is used, and the broader context" of the statute or agreement, *id.* at 341, which can include whether a proposed interpretation would render certain words "meaningless," *United States v. Littlefield*, 821 F.2d 1365, 1367 (9th Cir. 1987). If, based on these criteria, we find the language ambiguous, we may "look to other sources" to determine the meaning of the words in

---

[5] We need not decide whether to apply federal or state law in interpreting the Proclamation. As discussed below, the Proclamation is susceptible to only one plausible interpretation regardless of which law applies. Here, we cite principles of federal law because, were we to apply state law, we would be bound to follow the Washington Court of Appeal's decision in *Zack*. *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 995 (9th Cir. 2007) ("Where there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts.") (internal quotation marks omitted). We reach the same conclusion under either analysis.

question.  *United States v. Nader*, 542 F.3d 713, 717 (9th Cir. 2008).

We begin with the word "and" in the phrase "non-Indian defendants and non-Indian victims" in Paragraphs 2 and 3 of the Proclamation.**[6]**  The most common meaning of the word "and" is as a conjunction expressing the idea that the two concepts are to be taken "together."  *Webster's Third New International Dictionary* 80 (2002).  Thus, when "and" is used to join two concepts, it is usually interpreted to require "not one or the other, but both."  *Crooks v. Harrelson*, 282 U.S. 55, 58 (1930); *see also* 1A Norman J. Singer, Statutes and Statutory Construction § 21.14 at 177–79 (7th ed. 2009) ("Statutory phrases separated by the word 'and' are *usually* interpreted in the conjunctive.") (emphasis added).

But just because the ordinary meaning of "and" is typically conjunctive does not mean "and" cannot take on other meanings in context.  *See Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1141 (2018) ("context can overcome the ordinary, disjunctive meaning of 'or'").  Indeed, "and" can also mean "or" in some circumstances.  *Webster's Third New International Dictionary* 80 (2002) (alternative six of the second definition of "and": "reference to either or both of two alternatives . . . esp[ecially] in legal language when also plainly intended to mean *or*").  That is why "courts are often compelled to construe 'or' as meaning 'and,' and again 'and' as meaning 'or.'"  *United States v. Fisk*, 70 U.S. 445, 447 (1865); *see also* Bryan A. Garner, *A*

---

**[6]** Because DOI's acceptance of retrocession does not clarify or interpret what the State retroceded, *see* 80 Fed. Reg. at 63583, we need not determine how much weight to give an interpretive pronouncement in an acceptance of retrocession.

*Dictionary of Modern Legal Usage* 56 (3d ed. 2011) (noting that courts sometimes "recognize that *and* in a given context means *or* . . . ."); *Black's Law Dictionary* 86 (6th ed. 1990) (noting that "and" is "[s]ometimes construed as 'or'"). In fact, it is something we have already done. *See Cal. Lumbermen's Council v. FTC*, 115 F.2d 178, 184–85 (9th Cir. 1940). In *California Lumbermen's Council*, we interpreted an order prohibiting a party from engaging in activities "in connection with the purchase and the offering for sale" of lumber as forbidding the acts "separately or together" because that meaning was clear "when the order [was] read as a complete article." *Id.* at 185.

Examples of "and" used to mean "or" abound. For example, a child who says she enjoys playing with "cats and dogs" typically means that she enjoys playing with "cats or dogs"—not that cats and dogs must both be present for her to find any enjoyment. Similarly, a statement that "the Ninth Circuit hears criminal and civil appeals," does not suggest that an appeal must have a criminal and civil component for it to be properly before us. Nor would a guest who tells a host that he prefers "beer and wine" expect to receive "a glass of beer mixed with wine." *OfficeMax, Inc. v. United States*, 428 F.3d 583, 600 (6th Cir. 2005) (Rogers, J., dissenting). In each instance, the common understanding is that "and," as used in the sentence, should be construed as the disjunctive "or."

The same is true here when we examine "the broader context" of the Proclamation, *Robinson*, 519 U.S. at 341, in particular the Proclamation's use of the term "in part" in Paragraphs 2 and 3. In both Paragraphs 2 and 3, the State "retrocede[s]" criminal jurisdiction "in part," but retains "criminal jurisdiction" over "offenses involving non-Indian defendants and non-Indian victims." If "and" in those

sentences is interpreted to mean "or," the retrocession "in part" makes sense. Under that interpretation, the State has given back a portion of its Public Law 280 jurisdiction—jurisdiction over crimes involving only Indians—but has kept Public Law 280 criminal jurisdiction if a non-Indian is involved.

Interpreting "and" in those Paragraphs as conjunctive, however, does not give "in part" meaning. Under that interpretation, the State has retroceded all jurisdiction that it received under Public Law 280—that is, criminal jurisdiction over all cases involving Indians. If that is the case, Paragraphs 2 and 3 are no different than Paragraph 1, which retroceded "full civil and criminal jurisdiction" over certain subject matters. But that cannot be right, because Paragraph 1 uses the phrase "full," whereas Paragraphs 2 and 3 use the phrase "in part."

At bottom, the Yakama Nation's proposed interpretation changes the Proclamation's use of "in part" in Paragraphs 2 and 3 to "in full," thereby rendering "in part" meaningless. We must give "some significance" to "in part." *See In re Emerald Outdoor Advert., LLC*, 444 F.3d 1077, 1082 (9th Cir. 2006) (requiring courts to interpret language "in a manner that gives meaning to every word") (internal quotation marks omitted). And the only way to do so is to interpret "and" as disjunctive. We therefore conclude that the only plausible interpretation of Paragraphs 2 and 3 is to read them as stating "criminal offenses involving non-Indian defendants [or] non-Indian victims."

The Yakama Nation argues that the "in part" language is not meaningless under its interpretation because "in part" was nothing more than an indication that the State was preserving its "pre-Public Law 280 criminal jurisdiction over non-Indian versus non-Indian crimes." Aside from the

problems with this interpretation discussed above, the Yakama Nation's explanation does not make sense in the context of its request. Specifically, the Proclamation states that "[t]he retrocession petition by the Yakama Nation requests full retrocession of civil and criminal jurisdiction" obtained "in 1963" and full civil and criminal jurisdiction over the five areas listed in Washington Revised Code § 37.12.010, including "Operation of Motor Vehicles on Public Streets, Alleys, Road, and Highways." Given that the Yakama Nation's request was made in the context of Public Law 280—not all state jurisdiction over crimes committed on reservation land—it would make no sense for the Proclamation to retrocede "in part" if it was actually doing so "in full." The Nation's proposed interpretation therefore not only renders "in part" meaningless but also ignores the context of its own request for retrocession as set forth in the Proclamation.

Moreover, the Yakama Nation's argument that "retrocede, in part" merely indicates that the State was retaining pre-Public Law 280 jurisdiction ignores what "retrocede" means under Washington law and in the Proclamation. The statement "retrocede, in part" assumes that the "part" that is not being retroceded can be retroceded, but will not be. That logical conclusion works well if "and" is interpreted as disjunctive because the "part" the State retained is in fact jurisdiction it had authority to retrocede.

But if, as the Yakama Nation argues, the "part" retained was merely pre-Public Law 280 jurisdiction, the use of the word "retrocede" in the phrase "retrocede, in part" takes on a meaning unsupported by both Washington law and the Proclamation. Washington law defines "criminal retrocession" as "the state's act of returning to the federal government the criminal jurisdiction acquired over Indians

and Indian country *under federal Public Law 280*." Wash. Rev. Code § 37.12.160(9)(b) (emphasis added). And the Proclamation was issued pursuant to that authority, to "retrocede" "civil and criminal jurisdiction *previously acquired by the State . . . under Federal Public Law 280*." As a result, the Yakama Nation's interpretation would also require us to conclude that the State incorrectly believed it could retrocede pre-Public Law 280 jurisdiction but elected to retain only that "part."

In sum, only one interpretation of the Proclamation is plausible because only one interpretation gives meaning to every word. We therefore conclude, based on the Proclamation as a whole, and to give the phrase "in part" meaning, that the word "and" in the phrase "non-Indian defendants and non-Indian victims" in Paragraphs 2 and 3 should be interpreted as the disjunctive "or." Interpreted as such, the State retained criminal jurisdiction in Paragraphs 2 and 3 over cases in which any party is a non-Indian.

Because there is only one plausible interpretation of the Proclamation, we need not apply the canon of construction that ambiguities be resolved "for the benefit of an Indian tribe." *Artichoke Joe's*, 353 F.3d at 729. Nor need we look to "other sources" to interpret the Proclamation.[7] *Nader*, 542 F.3d at 717. But even if we did, those sources would support our conclusion.

---

[7] We grant the Yakama Nation's two motions to take judicial notice. But given our conclusion that there is only one plausible interpretation of the Proclamation, we need not consider any of the attached documents. Nor would any of the documents change our conclusion that the available extrinsic evidence generally supports our interpretation of the Proclamation.

The contemporaneous evidence strongly favors our interpretation. Governor Inslee's cover letter stating his intention to retain jurisdiction where any party is a non-Indian is consistent with the Proclamation's unambiguous language. Moreover, the Yakama Nation's retrocession petition requested full retrocession "over members of the Yakama Nation pursuant to RCW 37.12." The Yakama Nation was therefore requesting only retrocession of Public Law 280 jurisdiction. Interpreting the Proclamation's partial grant of retrocession as merely preserving pre-Public Law 280 jurisdiction does not make sense in light of the retrocession petition.

Nor is there any contemporaneous evidence as of the time retrocession was accepted that would change this conclusion. The letter sent to the Yakama Nation upon acceptance of retrocession takes no position as to the proper interpretation of the Proclamation. Instead, it states that DOI will not provide an interpretation of the scope of retrocession and that, if a dispute arises, "courts will provide a definitive interpretation of the plain language of the Proclamation." And the formal notice of acceptance of retrocession is similarly neutral, indicating only that the United States accepted "partial civil and criminal jurisdiction over the Yakama Nation." 80 Fed. Reg. at 63583.

Moreover, interpretations of the Proclamation since it was accepted further support our interpretation. The Yakama Nation points to a now-rescinded 2016 DOI memo stating that the State retained "jurisdiction only over civil and criminal causes of action in which no party is an Indian" and an email from the United States Attorney for the Eastern District of Washington. But neither document provides independent reasoning to support its conclusion. By contrast, in *Zack*, the Washington Court of Appeals

concluded, in a well-reasoned opinion, that "and" was properly read as disjunctive when read in the context of the whole Proclamation. 413 P.3d at 69–70. Similarly, in an opinion that overrode all prior federal analysis and interpretation of the Proclamation, the OLC memorandum analyzed the entire Proclamation and the history surrounding retrocession, and concluded that, read in the proper context, "and" means "and/or."

## IV

In sum, we hold that, under the Proclamation, the State retained criminal jurisdiction over cases in which any party is a non-Indian. Based on this holding, we find that the Yakama Nation has not shown "actual success on the merits" so as to justify a permanent injunction. We therefore affirm the district court.

**AFFIRMED.**