UNITED STATES of America Appellee,

v.

Jose Antonio PEREZ, aka Tony,
Raymond Pina, aka Shorty,
Defendants–Appellants.

Docket Nos. 03–1445(L),
04–0751–CR(CON).

United States Court of Appeals,
Second Circuit.

Argued: May 26, 2005.

Decided: July 11, 2005.

David A. Ring, Assistant U.S. Attorney, for Kevin J. O'Connor, U.S. Attorney for the District of Connecticut (William J. Nardini, of counsel), New Haven, CT, for appellee.

Diane Polan, New Haven, CT, for defendant-appellant.

Before: CALABRESI, KATZMANN, and B.D. PARKER, Circuit Judges.

PER CURIAM.

Defendant–Appellant Jose Antonio Perez ("Perez"), a member of the "Perez Organization," appeals from the judgment of the district court (Arterton, *J.*), convicting him on five counts [1] related to the murder-for-hire killing of Theodore Casiano ("Casiano"), the leader of a rival narcotics organization in Hartford, Connecticut. Per-

---

1. The five counts were:

1. Conspiracy to commit murder-for-hire involving interstate travel or the use of an interstate facility, in violation of 18 U.S.C. § 1958,

2. Using interstate travel for murder-for-hire, with the intent that the murder be committed in violation of federal or state laws as consideration for the promise to pay something of value, 18 U.S.C. § 1958,

3. Using an interstate facility for murder-for-hire, with the intent that the murder be committed in violation of federal or state laws as consideration for the promise to pay something of value, 18 U.S.C. § 1958,

4. Committing a violate crime in aid of racketeering (VICAR), under 18 U.S.C. §§ 1959(b)(2), 1961, and

5. Causing death by use of a firearm during a crime of violence, 18 U.S.C. §§ 924(c), 924(j)(1), 2.

ez was sentenced to four concurrent terms of life imprisonment and one consecutive five-year term.[2]

Most of Perez's claims on appeal have been denied in an unpublished summary order, which we issue together with this opinion, see United States v. Perez, 138 Fed. Appx. 379 (2d Cir.2005). We write here separately to address a question that, for this circuit, is one of first impression: whether a defendant can be convicted of using a facility in interstate commerce with the intent that a murder-for-hire be committed when the defendant's usage of that facility is wholly intrastate.

I.

In May 1996, in retaliation for the Savage Nomads' aggressive efforts to regain their share of the Hartford area's narcotics trade,[3] members of the Perez Organization decided that Casiano should be killed. Accordingly, a professional "hit man" (and his associates) from the Bronx was hired to travel to Connecticut to murder Casiano.

For purposes of the legal question before us, it suffices to say that one of Perez's responsibilities—and the only one currently at issue—was to call Casiano on the telephone (as well as "page" his beeper)

and invite him to a meeting, ostensibly to resolve their differences, at Perez Auto, a garage in Hartford owned by Wilfredo Perez. In fact, however, Perez was luring Casiano to the garage to give the hit men a clear opportunity to kill their target.

It was established at trial, by a representative of the local telephone company ("Southern New England Telephone" or "SNET"), that the calls made by Perez to Casiano on the day of the shooting were wholly intrastate calls. That is, the calls did not require any switching or routing connections outside of the State of Connecticut. As a general matter, however, SNET did provide local customers with access to long-distance calling plans and, as such, the SNET network was undeniably a facility involved in interstate communication.

II.

Perez argues that, because his calls to Casiano from Perez Auto were local and did not involve any interstate communication, he should not have been found guilty under 18 U.S.C. § 1958, which proscribes the use of interstate facilities in the commission of a murder-for-hire.[4]

---

2. Raymond Pina, who was tried with Perez, withdrew his appeal prior to the date of oral argument.

3. Casiano had been the leader of a gang called the Savage Nomads. The Nomads were, among other things, heavily involved in the sale of narcotics. While Casiano was in federal prison, the Savage Nomads' market share declined considerably—and they lost particular ground to the Perez Organization, which at all times was led by the appellant's brother, Wilfredo Perez. Ever since Casiano was released from prison in 1995, tension between the Savage Nomads and the Perez Organization ran high.

4. Prior to amendment in 2004, 18 U.S.C. § 1958 read:

Use of interstate commerce facilities in the commission of murder-for-hire

(a) Whoever travels in or causes another (including the intended victim) to travel in interstate or foreign commerce, or uses or causes another (including the intended victim) to use the mail or any facility of interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, or who conspires to do so, shall be fined under this title or imprisoned for not more than ten years, or both; and if personal injury results, shall be fined under this title or imprisoned for not more than twenty years, or both; and if death results, shall be punished

He notes that § 1958(a)—the substantive subsection of the provision, uses the language: "Whoever ... uses ... any facility *in* interstate ... commerce ...." (emphasis added). By contrast, § 1958(b)—the definitional subsection—describes "facility *of* interstate commerce" (emphasis added) to include means of transportation and communications. Perez therefore contends that the meaning in § 1958(a) is narrower than § 1958(b). In other words, whereas "use of a facility of interstate commerce" (subsection (b)) applies to any use of a facility that happens—at times—to be involved in interstate commerce, "use of a facility in interstate commerce" (subsection (a)) requires the defendant to have actually used the facility in its interstate capacity in furtherance of the murder-for-hire.

There is a circuit split on the question of whether the actual use by the defendant must be an interstate one. Supporting the position taken by the district court in the instant case—that is, *not requiring* an actual interstate usage—are opinions by the Fifth and Seventh Circuits. *See United States v. Marek*, 238 F.3d 310, 313 (5th Cir.2001) (en banc) (holding that § 1958(a)'s "use of a facility *in* interstate commerce" is synonymous with § 1958(b)'s "use of a facility *of* interstate commerce" and therefore that § 1958(a) satisfies the jurisdictional element of the federal murder-for-hire statute, irrespective of whether the particular usage in question was itself *interstate* or *intrastate,* so long as the facility is one involved in interstate

commerce); *United States v. Richeson,* 338 F.3d 653, 660 (7th Cir.2003) ("We wholly agree with the Fifth Circuit that § 1958's construction, plain language, context in the realm of commerce clause jurisprudence, and legislative history all lead to the conclusion that 'it is sufficient [under § 1958] that the defendant used an interstate commerce facility in an *intra* state fashion.'" (quoting *Marek,* 238 F.3d at 315)).

Bolstering Perez's claim, at least to a limited extent, is an opinion of the Sixth Circuit, as well as two district court decisions in our circuit. *See United States v. Weathers,* 169 F.3d 336, 341–43 (6th Cir. 1999) (holding that the communication itself involved in the murder-for-hire conspiracy must affect interstate commerce); *United States v. Paredes,* 950 F.Supp. 584, 590 (S.D.N.Y.1996) (holding that an *intra* state "page" was insufficient to establish jurisdiction even when pager company itself also had the capacity to transmit—and regularly did transmit—its signals *inter* state); *United States v. Stevens,* 842 F.Supp. 96, 98 (S.D.N.Y.1994) (holding that *intra* state "page" to a beeper was sufficient to establish murder-for-hire jurisdiction only because the pager company transmitted its signals through an interstate facility). *But see United States v. Cope,* 312 F.3d 757, 771 (6th Cir.2002) (limiting *Weathers* to its facts).

We adopt the reasoning of *Marek* and today hold that the phrases "facility *of* interstate commerce" and "facility *in* interstate commerce" are to be used *inter-*

---

by death or life imprisonment, or shall be fined not more than $ 250,000, or both.
(b) As used in this section and section 1959 [18 U.S.C. § 1959]—
(1) "anything of pecuniary value" means anything of value in the form of money, a negotiable instrument, a commercial interest, or anything else the primary significance of which is economic advantage;

(2) "facility of interstate commerce" includes means of transportation and communication; and
(3) "State" includes a State of the United States, the District of Columbia, and any commonwealth, territory, or possession of the United States.

305

changeably. *See Marek,* 238 F.3d at 321. Moreover, we agree with the Government's argument that taking "in" and "of" to connote different scopes of coverage is difficult to square with the structure of the statute, which makes "the use of a facility *in* interstate commerce" part of the substantive law of § 1958(a), and defines "facility *of* interstate commerce" in § 1958(b). If the phrases have different meanings, then § 1958(b) defines a phrase with no application to the substantive offense, and leaves undefined the phrase that does appear in the substantive law.[5] We note that the question we settle today will have little importance going forward, as Congress has recently amended the statute to eliminate any confusion over the scope of § 1958(a).

### III.

As a result, even though Perez's calls to Casiano were wholly intrastate communications, the fact that they were made using the SNET network, a facility involved in interstate commerce, leads us to conclude that Perez was properly subject to prosecution for using interstate commerce facilities in the commission of murder-for-hire. Accordingly, we AFFIRM the judgment of the district court.

**5.** The Intelligence Reform and Terrorism Prevention Act of 2004, Pub.L. No. 108–458, 118 Stat. 3638, in part amended § 1958(a) by striking "facility in" and replacing it with "facility of." This specific amendment was entitled "Clarification of Definition" and purported to seek to eliminate any confusion that had previously existed, as evidenced by the circuit split. Because we agree with the Fifth Circuit, we, also, view what Congress was doing as clarifying rather than expanding the scope of the criminal law.