**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 24, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

HUGH ALAN MEANS,

Defendant - Appellant.

No. 07-7112

E.D. Okla.

(D.C. Nos. 6:05-CV-00490-JHP and
6:04-CR-00051-RAW-1)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN**, **EBEL**, and **GORSUCH**, Circuit Judges.

---

Hugh Alan Means pled guilty to conspiracy to violate 18 U.S.C. § 1958(a)

(use of an interstate facility in a murder-for-hire scheme) in violation of 18

U.S.C. § 371. He filed a motion to vacate, set aside or correct sentence under 28

U.S.C. § 2255 arguing the district court lacked subject matter jurisdiction over his

prosecution because his conduct did not involve the interstate use of a

communications facility as required by 18 U.S.C. § 1958(a) at the time of his

plea. The district court denied his motion concluding his argument was waived

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

by his guilty plea but granted Means a certificate of appealability (COA) on the issue of whether the interstate-nexus element contained within 18 U.S.C. § 1958(a) is jurisdictional and its relevance to a conviction under 18 U.S.C. § 371. *See* 28 U.S.C. § 2253(c)(1)(B); Fed. R. App. P. 22(b)(1). While we conclude the district court erred in determining Means' argument was waived by his guilty plea, we nevertheless affirm the denial of his § 2255 motion.

## I. BACKGROUND

In late 2003, Means and his employee, Katherine Robertson, with whom he was having an affair, began searching for an individual to kill Robertson's husband. In attempting to find a "hit man," Means contacted Michael Bruner, who in turn notified the Federal Bureau of Investigation (FBI). The FBI, without Means' knowledge, began recording Means and Bruner's meetings and cellular telephone conversations. Those recordings revealed Bruner introduced Means to a "hit man" named Roy (an undercover agent); Means agreed to pay Roy $15,000 to kill Robertson's husband and paid him a total of $10,000 before his arrest; and Means gave Bruner $5,000 for placing him in contact with Roy.

Means was charged with and pled guilty to conspiracy to violate 18 U.S.C. § 1958(a), use of an interstate facility, to wit: a telephone, in a murder-for-hire-scheme, in violation of 18 U.S.C. § 371. At the plea hearing, Means admitted he agreed with Robertson "to use an interstate facility in a murder-for-hire conspiracy." (R. Vol. I at 57.) He was sentenced to five years imprisonment. He

did not file a direct appeal.

Means timely filed a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255. He claimed that prior to December 2004, § 1958(a) only prohibited the *interstate* use of a communications facility with the intent that a murder be committed. Because the use of his cellular telephone in this case was limited solely to *intrastate* calls and any interstate activity that did occur was unilaterally caused by the government in an improper attempt to manufacture jurisdiction, Means argued the jurisdictional requirement of the offense was not, and could not be, demonstrated. Therefore, he complained the court lacked subject matter jurisdiction over his conviction and sentence.

The district court denied Means' § 2255 motion. It concluded it had subject matter jurisdiction over Means' prosecution under 18 U.S.C. § 3231 which grants federal district courts "original jurisdiction . . . of all offenses against the law of the United States." It also determined proof of the "jurisdictional" element of § 1958(a) was not a prerequisite to that jurisdiction: "Although the interstate nexus element of 18 U.S.C. § 1958 is often referred to as the 'jurisdictional' element of the statute, it is only 'jurisdictional' in the colloquial sense that without that nexus, there can be no federal crime under the statute." (R. Vol. II at 1855.) Construing Means' argument as an attack on the sufficiency of the government's proof of an element of an offense, the court concluded his argument was a non-jurisdictional attack on his conviction which

-3-

was waived by his guilty plea.[1]

## II.  STANDARD OF REVIEW

We review the district court's legal rulings de novo and its factual findings for clear error.  *United States v. Orange*, 447 F.3d 792, 796 (10th Cir. 2006).  Determination of the district court's subject matter jurisdiction is a question of law reviewed de novo.  *In re Franklin Savings Corp.*, 385 F.3d 1279, 1286 n.6 (10th Cir. 2004).

## III.  DISCUSSION

Means argues the district court erred in concluding his § 2255 motion was not a jurisdictional attack on his conviction.  He asserts a federal court may only convict someone of a federal crime and absent the actual commission of a federal

---

[1] The district court also found Means' argument ignored the fact he pled guilty to § 371, not § 1958, and § 371 does not require proof he used a facility in interstate commerce but merely an agreement to violate § 1958.  After the court's decision, we decided Robertson's appeal.  *See United States v. Robertson*, 473 F.3d 1289 (10th Cir. 2007).  She was convicted by a jury of conspiracy to violate § 1958(a) in violation of § 371.  In addressing her argument that the conspiracy jury instruction should have included an intent to commit murder element, we noted a proper instruction on the elements of conspiracy would be:  "(1) the defendant agreed with at least one other person to violate the law; (2) the defendant knew the essential objective of the conspiracy was to use an interstate facility in a murder for hire; (3) the defendant, at the time the conspiracy was entered into, intended that a murder be committed; (4) the defendant knowingly and voluntarily participated; and (5) there was interdependence among the members of the conspiracy."  *Id.* at 1292 n.1.  Therefore, while the district court was correct that a conspiracy to violate § 1958(a) does not require proof of actual use of a facility, it does require proof the parties agreed to such use.  Consequently, whether § 1958(a) required interstate use of a facility or use of an interstate commerce facility at the time of Means' plea is relevant even though he was convicted of conspiracy to violate § 1958(a).

crime the court has no subject matter jurisdiction. Means claims that at the time of his conviction, his alleged conspiracy offense required interstate use of a communication facility. Because there was no proof of the interstate use of a communications facility (or a plan for such use), no federal crime existed and the court lacked subject matter jurisdiction over his conviction and sentence.

Construing Means' argument as a non-jurisdictional attack on the sufficiency of the government's proof of an element of the offense, the district court concluded it was waived by Means' guilty plea. *See Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."); *see also United States v. Wright*, 43 F.3d 491, 494 (10th Cir. 1994) ("A defendant who knowingly and voluntarily pleads guilty waives all non-jurisdictional challenges to his conviction."). We agree an attack on the sufficiency of the government's proof of an element of the offense, even if that element is the "jurisdictional" element, is a non-jurisdictional argument waived by a defendant's guilty plea. *See United States v. Tush*, 287 F.3d 1294, 1297 (10th Cir. 2002) (rejecting defendant's argument that the court lacked subject matter jurisdiction over his conviction and sentence because the government had failed to establish interstate commerce element of his offense; the court had jurisdiction under 18 U.S.C. § 3231 and defendant had "relieved the government of its burden of proving the interstate commerce element . . . by twice

explicitly stipulating a sufficient nexus and independently by pleading guilty.").
However, that is not Means' argument.

Although not a model of clarity, Means' § 2255 motion and supplemental brief in the district court argued the government's proof only showed *intrastate* use of his cellular telephone in a murder-for-hire scheme and at the time of his plea, § 1958(a) required the *interstate* use of a communications facility. Therefore, Means is not claiming the government's proof of an element of the offense is lacking but rather its proof (to which he admitted) did not constitute a federal offense at the time of his plea. Means' guilty plea does not bar review of this claim.

An exception to the rule barring collateral attacks on guilty pleas exists when the defendant claims he had "the right not to be haled into court at all upon the felony charge." *Blackledge v. Perry*, 417 U.S. 21, 30 (1974); *see United States v. Broce*, 488 U.S. 563, 574-76 (1989); *Menna v. New York*, 423 U.S. 61, 62 & n.2 (1975). We applied this exception in *United States v. Barboa*, 777 F.2d 1420 (10th Cir. 1985). There, Barboa pled guilty to conspiracy to damage and destroy by explosives a building used in an activity affecting interstate commerce. He later filed a § 2255 motion claiming the individual with whom he allegedly conspired was a government informant. We concluded there can be no indictable conspiracy involving only the defendant and government agents or informers. *Id.* at 1422. In doing so, we rejected the government's argument that Barboa's guilty

plea constituted an admission that he committed the crime of conspiracy.  *Id.* at

1423 n.3.  Relying on *Blackledge* and *Menna*, we held:

> A plea of guilty . . . does not bar a claim that the defendant may not
> constitutionally be convicted in the first instance, no matter how
> validly his factual guilt is established.  If Barboa pled guilty to
> something which was not a crime, he is not now precluded from
> raising this [issue], which goes to the very power of the State to
> bring the defendant into court to answer the charge brought against
> him.

*Id.* (citation and quotations omitted); *see also United States v. Barnhardt*, 93 F.3d

706, 708 (10th Cir. 1996) (applying exception where defendant claimed the

factual basis for his plea did not constitute a crime).[2]

Means' § 2255 motion alleging his conduct did not constitute a crime at the

time of his plea fits within this exception.  While the district court erred in

concluding Means' guilty plea precluded review of his § 2255 motion, we

nevertheless affirm its denial because Means' argument lacks merit.  *See Swoboda

v. Dubach*, 992 F.2d 286, 291 (10th Cir. 1993) ("[We] can affirm for reasons

other than those relied on by the district court, as long as those reasons find

support in the record.").

Prior to December 2004 and at the time of Means' conviction, § 1958(a)

stated in relevant part: "Whoever . . . *uses* . . . *any facility <u>in</u> interstate or foreign*

---

[2] In *Barboa*, we referred to this as a "jurisdictional" issue.  777 F.2d at
1423 n.3.  However, neither *Blackledge*, *Menna*, *Broce* nor *Barnhardt* used the
term jurisdictional.  We need not decide whether this issue is jurisdictional.
Whether considered jurisdictional or not, it is an exception to the rule barring
collateral attacks on guilty pleas.

*commerce*, with intent that a murder be committed . . . . shall be fined . . . or imprisoned . . . ." (emphasis added). While subsection (a) referred to "facility *in* interstate . . . commerce," subsection (b) defined "facility *of* interstate commerce" as including "means of transportation and communication." (emphasis added). This internally inconsistent language led to confusion as to whether the statute prohibited the intrastate use of an interstate commerce facility in a murder-for-hire scheme. A majority of the circuits addressing the issue have decided it did. *See, e.g., United States v. Perez*, 414 F.3d 302, 304-05 (2d Cir. 2005); *United States v. Richeson*, 338 F.3d 653, 660 (7th Cir. 2003); *United States v. Marek*, 238 F.3d 310, 313 (5th Cir. 2001) (en banc); *but see United States v. Weathers*, 169 F.3d 336, 342 (6th Cir. 1999) (concluding the government must show the defendant used a facility in interstate commerce to satisfy § 1958's interstate commerce element).[3] We agree with the majority.

The plain language of § 1958(a) demonstrates the phrase "in interstate or foreign commerce" is an adjective clause modifying the noun "facility" not "use" because it directly follows "facility." *See Marek*, 238 F.3d at 316. Therefore, the statute only requires use of an interstate commerce facility, not interstate use of such facility. This interpretation is consistent with the structure of the statute. *See Perez*, 414 F.3d at 305. The substantive portion of § 1958(a) uses the phrase

---

[3] In a subsequent case, however, the Sixth Circuit stated it agreed with *Marek* and limited *Weathers* to its facts. *See United States v. Cope*, 312 F.3d 757, 771 (6th Cir. 2002)

"facility in interstate or foreign commerce" while the definitional section, § 1958(b), defines the phrase "facility of interstate commerce." "If the phrases have different meanings, then § 1958(b) defines a phrase with no application to the substantive [part of the] offense, and leaves undefined the phrase that does appear in the substantive law." *Id*. Even assuming § 1958 is ambiguous, its legislative history demonstrates Congress intended to prohibit the intrastate use of an interstate commerce facility. This is because Congress enacted § 1958 pursuant to its commerce power to regulate and protect the instrumentalities of interstate commerce, even when the threat to those instrumentalities arises solely from intrastate activities. *See Richeson*, 338 F.3d at 660-61; *Marek*, 238 F.3d at 317. Finally, any lingering doubt as to the proper interpretation of the pre-December 2004 version of § 1958 is eliminated by its title—"Use of interstate commerce facilities in the commission of murder-for-hire." [4] *See Richeson*, 338 F.3d at 660; *Marek*, 238 F.3d at 322.

---

[4] In December 2004, Congress resolved any confusion by amending § 1958(a) to read in relevant part:

> a) Whoever uses . . . *any facility of interstate or foreign commerce*, with intent that a murder be committed . . . . shall be fined . . . or imprisoned . . . .

(emphasis added). This amendment makes clear that § 1958's interstate commerce element is met whenever any interstate commerce facility is used in the commission of a murder-for-hire offense, regardless of whether that use was interstate or purely intrastate in nature.

Because the pre-December 2004 version of § 1958(a) prohibited the intrastate use of an interstate commerce facility and Means admitted he agreed with Robertson to the intrastate use of an interstate commerce facility[5] in a murder-for-hire scheme, his § 2255 motion was properly denied.[6]

**AFFIRMED**.

ENTERED FOR THE COURT

Terrence L. O'Brien
Circuit Judge

---

[5] Cellular telephones are instrumentalities of interstate commerce, *see United States v. Evans*, 476 F.3d 1176, 1180 (11th Cir.), *cert. denied*, 128 S.Ct. 193 (2007), and Means does not contend otherwise.

[6] The government contends Means waived his right to collaterally attack his conviction and sentence in his plea agreement. The government is correct that Means' plea agreement contained a waiver of post-conviction rights except to the extent Means' received an upward departure and a sentence in excess of 60 months. It is unclear, however, whether the waiver applies to Means' § 2255 motion, which challenges his conviction, as its language appears to only limit future attacks on his sentence. Therefore, we do not rely on the waiver.