*U.S. v. Rivera*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of October, two thousand nineteen.

PRESENT:
> JOHN M. WALKER, JR.,
> SUSAN L. CARNEY,
>> *Circuit Judges*,
> JOHN G. KOELTL,
>> *District Judge.*\*

---

UNITED STATES OF AMERICA,

    *Appellee*,

    v.                               No. 18-1393

HECTOR RIVERA,

    *Defendant-Appellant.*

---

FOR DEFENDANT-APPELLANT:        ROBERT A. CULP, Law Office of Robert A. Culp, Garrison, NY.

---

\* Judge John G. Koeltl, of the United States District Court for the Southern District of New York, sitting by designation.

FOR APPELLEE:                                    SCOTT HARTMAN (Jordan Estes, Daniel B. Tehrani, *on the brief*), *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Engelmayer, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on May 7, 2018, is **AFFIRMED**.

Defendant-Appellant Hector Rivera appeals from a judgment of conviction entered on May 7, 2018, following a five-day jury trial in the United States District Court for the Southern District of New York (Engelmayer, *J.*). Rivera was convicted of (1) conspiracy to commit murder for hire in violation of 18 U.S.C. § 1958; (2) murder for hire in violation of 18 U.S.C. §§ 1958 and 2; and (3) carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §§ 924(j) and 2. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.[1]

At trial, the government relied primarily on the testimony of two cooperating witnesses, Lixander Morales and Roni Amrussi, to prove that Rivera orchestrated the murder of Eduard Nektalov, a jeweler in Manhattan's Diamond District. According to this testimony, Rivera started working as a "muscle man" for Amrussi, another diamond dealer in the District, in the 1990s. Although Rivera's services included providing Amrussi with protection, Amrussi was physically assaulted by Nektalov's associates in 2001, following a business dispute between the two men. The incident angered Rivera, and in 2004, he

---

[1] As required "when evaluating an appeal following a conviction by a jury, we recite the facts in the light most favorable to the government, and as the jury was entitled to find them in its deliberations." *United States v. Kirk Tang Yuk*, 885 F.3d 57, 65 (2d Cir. 2018).

proposed to Amrussi that they "hurt Eddie Nektalov." Tr. 238.[2] Rivera suggested that the police would not suspect that they were behind an attack on Nektalov because Nektalov, who was facing criminal charges of money laundering at the time, had "many enemies" who were concerned that Nektalov was cooperating with law enforcement. Tr. 239.

Amrussi directed Rivera not to hurt Nektalov, but Rivera nevertheless asked Morales, an associate who had previously helped Rivera commit robberies, to find a hitman to kill Nektalov. Morales, in turn, traveled to Puerto Rico to recruit his friend, Carlos Fortier, for the job. Although he discovered on this trip that Fortier was actually living in New York, not Puerto Rico, Morales was able to obtain Fortier's phone and contact information from persons in Puerto Rico. Morales then returned to New York, located Fortier, and arranged a meeting between Rivera and Fortier. Later, at Rivera's direction, Morales took Fortier to Nektalov's jewelry store on 47th Street and showed him escape routes for possible use after the murder. Rivera also gave Morales a black Colt .45 to give to Fortier, instructing him to return the gun after "the job was finished." Tr. 503.

On May 20, 2004, Fortier shot and killed Nektalov with Rivera's gun. Shortly thereafter, Rivera met with Morales, paid him $20,000, and told him that he had also paid Fortier for the murder.[3] Rivera then went to Amrussi, from whom he demanded $150,000 so that he (Rivera) could pay "[the] people who kill[ed] Eddie Nektalov." Tr. 248. Amrussi complied, fearing that Rivera would otherwise harm him.

On November 17, 2017, a jury found Rivera guilty as charged. In 2018, the District Court sentenced him to two terms of life imprisonment to run concurrently plus twenty-five years on the firearms count to run consecutively to the sentences on the other two counts.

On appeal, Rivera advances five challenges to his convictions. He first disputes the sufficiency of the government's evidence as to the interstate aspect of his murder-related convictions. He then argues that the District Court erred by admitting evidence of Rivera's

---

[2] "Tr." refers to the full trial transcript filed on the District Court's docket, and "App'x" refers to the appendix filed by Rivera on appeal.

[3] Fortier died in prison before Rivera's trial commenced.

prior criminal activity; restricting his ability to cross-examine a government witness; excluding from the jury charge his proposed instruction on witness credibility; and conducting certain sidebar discussions with counsel outside of his presence. For the reasons set forth below, we conclude that Rivera has provided no basis for overturning his convictions.

1. Sufficiency of the Evidence

Rivera argues that the government did not introduce sufficient evidence that he caused interstate travel or used a facility of interstate commerce with the intent to commit murder for hire—an element of his murder-for-hire offenses based on 18 U.S.C. § 1958. In evaluating a sufficiency challenge, "we view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." *United States v. Babilonia*, 854 F.3d 163, 174 (2d Cir. 2017) (internal quotation marks omitted). Our review is therefore "exceedingly deferential," *United States v. Coplan*, 703 F.3d 46, 62 (2d Cir. 2012) (citation omitted), and we must affirm a defendant's conviction "if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Babilonia*, 854 F.3d at 174 (internal quotation marks and emphasis omitted).

When Nektalov was killed in May 2004, section 1958(a) provided in relevant part:

> Whoever *travels in or causes another . . . to travel in interstate or foreign commerce, or uses or causes another . . . to use the mail or any facility in interstate or foreign commerce, with intent that a murder be committed* in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, or who conspires to do so, shall be . . . imprisoned for not more than ten years . . . ; and if death results, shall be punished by death or life imprisonment . . . .

4

18 U.S.C. § 1958(a) (1996) (emphasis added).[4] The government can thus satisfy section 1958's interstate-commerce requirement by proving that, with the requisite *mens rea*, *i.e.*, with the intent to commit murder for hire, a defendant either (1) traveled interstate or used a facility of interstate commerce, or (2) caused another to do so.

In this case, the government introduced evidence from which a rational trier of fact could conclude beyond a reasonable doubt that Rivera caused another to travel interstate with the intent to hire a hitman. According to Morales's testimony at trial, Rivera instructed Morales to "get someone" to kill Nektalov. Tr. 495. Morales acted on those instructions by traveling from New York to Puerto Rico to recruit Fortier, and Rivera paid the expenses of Morales's interstate travel. Although, while in Puerto Rico, Morales discovered that Fortier lived in New York, Morales succeeded during his travels in obtaining Fortier's contact information from Fortier's relatives, who resided there. With this information, upon his return Morales was able to locate Fortier at a New York housing facility and arrange a meeting between Rivera and Fortier. In light of Morales's testimony—which the jury was permitted to credit—we conclude that a rational trier of fact could find that Rivera caused Morales's interstate travel and that Rivera did so with the intent to have Morales recruit a gunman to kill Nektalov in return for compensation. *See United States v. James*, 239 F.3d 120, 124 (2d Cir. 2000) ("[T]he credibility of witnesses is the province of the jury and we simply cannot replace the jury's credibility determinations with our own." (internal quotation marks omitted)).

On appeal, Rivera contends that Morales's trip to Puerto Rico does not satisfy section 1958(a)'s interstate-commerce requirement because at the time of the travel, "[t]here was no agreement [to commit murder] in existence" between Rivera and Fortier. Appellant's Br. 28. This argument fails, however, because section 1958(a) does not require that the interstate travel occur after defendants have finalized an agreement to carry out murder for hire.

---

[4] Congress amended section 1958(a) in 2004 by changing the phrase "facility *in* interstate or foreign commerce" to "facility *of* interstate or foreign commerce." *Compare* 18 U.S.C. § 1958(a) (1996) *with* 18 U.S.C. § 1958 (2004)(emphasis added). As we explained in *United States v. Perez*, however, this amendment did not alter the section's substance. 414 F.3d 302, 304 (2d Cir. 2005).

Instead, it requires merely that a defendant act with the requisite *mens rea*—*i.e.*, "with the intent that murder be committed [for hire]"—when he travels, or causes another individual to travel, across state lines. 18 U.S.C. § 1958(a) (1996). Here, the record supports a finding that Rivera caused Morales to travel to Puerto Rico for the illicit purpose. Accordingly, Rivera's sufficiency challenge falls short.

2. Prior Criminal Activity

Next, Rivera argues that the District Court abused its discretion by admitting testimony concerning prior criminal activity that Rivera jointly committed with Amrussi and Morales. This activity included acts of extortion, robbery, and attempted kidnapping. Rivera contends that this testimony was inadmissible propensity evidence and should have been excluded under Federal Rule of Evidence 404(b).

Rule 404(b) "prohibits the admission of evidence of prior crimes, wrongs, or acts to prove the defendant's propensity to commit the crime charged." *United States v. Dupree*, 870 F.3d 62, 76 (2d Cir. 2017) (internal quotation marks omitted). Under this Circuit's "inclusionary approach," however, prior act evidence is admissible under Rule 404(b) "if offered for any purpose other than to show a defendant's criminal propensity." *Id.* (internal quotation marks omitted). Thus, for example, "[a] district court can . . . admit evidence of prior acts to inform the jury of the background of the conspiracy charged, in order to help explain how the illegal relationship between participants in the crime developed, or to explain the mutual trust that existed between coconspirators." *Id.* (internal quotation marks omitted).

In reviewing a district court's Rule 404(b) determination, we consider whether: "(1) the prior crimes evidence was offered for a proper purpose; (2) the evidence was relevant to a disputed issue; (3) the probative value of the evidence was substantially outweighed by its potential for unfair prejudice pursuant to Rule 403; and (4) the court administered an appropriate limiting instruction." *United States v. Curley*, 639 F.3d 50, 56-57 (2d Cir. 2011) (internal quotation marks omitted). We will not overturn "[a] district court's decision to

6

admit other crimes evidence under Rule 404(b) . . . absent abuse of discretion." *United States v. Guang*, 511 F.3d 110, 121 (2d Cir. 2007) (internal quotation marks and alterations omitted).

Here, we identify no abuse of discretion in the District Court's decision to allow evidence of Rivera's prior criminal activity with Amrussi and Morales. The government argued, and the District Court reasonably accepted, that the evidence would explain: (1) why Rivera would reveal his murder plans to Morales and Amrussi; (2) why he would entrust Morales with the sensitive task of hiring a hitman; and (3) why he would want to retaliate against Nektalov after Nektalov's associates assaulted Amrussi. The evidence was therefore introduced for proper purposes—namely, to provide background information on the development of the criminal conspiracy and the motive behind Nektalov's murder. *See id.* at 121 (affirming the admission of other crimes evidence that was offered to "show the existence of the illegal relationship between [co-conspirators] . . . and how it developed"); *United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996) (affirming the admission of other crimes evidence that was offered "to make the story of the crimes charged complete and to enable the jury to understand how the illegal relationship between the co-conspirators developed"). Indeed, as the District Court aptly noted, "Were evidence of [Rivera's] longstanding criminal relationship [with Amrussi and Morales] stripped away, it might well seem improbable to a reasonable juror that Rivera would trust the [cooperating witnesses] with such combustible information and/or such sensitive tasks." App'x 38.

Nor did the District Court err in concluding that the probative value of this evidence outweighed its risk of creating unfair prejudice. Rivera's prior criminal relationships with Amrussi and Morales were highly probative of several contested issues, including Rivera's motivation for murdering Nektalov and the credibility of Amrussi's and Morales's testimony. His prior criminal activities with Amrussi and Morales (*i.e.*, robbery, extortion, and attempted kidnapping), while serious, were "not unfairly prejudicial as they were no more sensational or disturbing than the crimes with which [Rivera] was charged" (*i.e.*, murder for hire). *Curley*, 639 F.3d at 59 (internal quotation marks omitted); *see also Dupree*, 870 F.3d at 77 ("There was no undue prejudice because the [prior] acts did not involve conduct more serious than the crimes charged . . . ."). Further, the District Court mitigated any prejudicial effects with

proper limiting jury instructions. We therefore conclude that the District Court acted well within the bounds of its discretion in allowing the challenged evidence.

3. Cross-Examination

Rivera contends next that the District Court violated his Sixth Amendment confrontation rights by restricting his ability to cross-examine Detective Della Rocca, a government witness, about the adequacy of the police investigation into Nektalov's murder. As defense counsel explained to the District Court at sidebar, the police arrested one Simon Samandarov for the shooting of Nektalov's cousin, Alik Pinkhasov, several months before Nektalov was killed. According to an internal police report produced to the defendant before trial under 18 U.S.C. § 3500, mere hours before he was shot dead, Nektalov received a phone call in which "a male named either Sasha or Sam[] stat[ed] in substance that [Nektalov] should have his cousin Alik drop [certain] charges or the same thing [would] happen to [Nektalov] that happened to [his] cousin." App'x 65. Rivera sought to introduce evidence of this threatening phone call for the non-hearsay purpose of showing that the police failed to properly investigate other potential suspects in the murder of Nektalov, namely, Samandarov and his associates.

The District Court denied the request. Relatedly, however, it permitted defense counsel to cross-examine Detective Della Rocca about the earlier arrest of Samandarov in connection with the Pinkhasov shooting. In so ruling, the District Court contrasted the testimony about the arrest with the proposal regarding the phone call and police reports, noting that the latter presented "an extreme hearsay problem." App'x 69. It expressed concern that, even with a limiting instruction, "[t]he dramatic quality of the hearsay claim that [Nektalov] . . . received an arguable death threat several hours before his death" would make it difficult for the jury not to consider the threat made in the phone call, as noted in the police report, for the truth of the matter asserted. App'x 75. Citing these and other considerations, the District Court excluded the proffered statement under Federal Rule of Evidence 403. It made clear at the same time that its ruling was "without prejudice," and that defense counsel could "try to figure out a different way to work around this [evidentiary

problem].” App’x 76, 78. It also observed that Rivera was “at liberty to explore the police investigation into the Pinkhasov shooting.” App’x 78.

The Confrontation Clause “guarantees a criminal defendant the right to cross-examine government witnesses at trial.” *United States v. Figueroa*, 548 F.3d 222, 227 (2d Cir. 2008). That right does not, however, “guarantee unfettered cross-examination.” *Alvarez v. Ercole*, 763 F.3d 223, 230 (2d Cir. 2014). Rather, “[d]istrict courts may impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness’ safety, or interrogation that is repetitive or only marginally relevant.” *Figueroa*, 548 F.3d at 227 (internal quotation marks omitted). A district court typically “exercises [its] discretion by balancing the probative value of the evidence against the potential for unfair prejudice,” *Watson v. Greene*, 640 F.3d 501, 511 (2d Cir. 2011), and “[o]nly when this broad discretion is abused will we reverse a trial court’s decision to restrict cross-examination,” *United States v. Crowley*, 318 F.3d 401, 417 (2d Cir. 2003).

Here, the District Court did not abuse its discretion by precluding Rivera from cross-examining Detective Della Rocca about the threatening phone call. The probative value of the phone call—which Rivera proposed to adduce for the sole purpose of showing that law enforcement failed to conduct an adequate investigation—was limited. Rivera does not dispute that he could have tested the adequacy of the police investigation into Nektalov’s death through other witnesses or other evidence. Nor does he contest that law enforcement did, in fact, “meaningful[ly]” investigate “the relationship, if any, between the Pinkhasov attack and the Nektalov murder.” App’x 70. Further, the District Court correctly recognized that the phone call created “a considerable risk . . . [that] [t]he jury would or might well consider the statement for the truth of the embedded matter asserted”—*i.e.*, that Nektalov actually received a phone call, just hours before he was murdered, in which the speaker made a veiled threat to shoot him. App’x 75. Because we agree that the danger of jury confusion substantially outweighed the phone call’s probative value, we conclude that the District Court acted within its “broad discretion” when it curtailed Rivera’s cross-examination of Detective Della Rocca. *Crowley*, 318 F.3d at 417.

9

In reaching this conclusion, we note that the situation presented here differs from that found in *Alvarez v. Ercole*, 763 F.3d 223 (2d Cir. 2014), a case relied on by Rivera. In *Alvarez*, we considered in a habeas action whether the state trial court violated Alvarez's Sixth Amendment rights by restricting his ability to cross-examine a government witness during his trial for murder. In support of "his main defense theory[] that the police investigation into the murder was flawed and had improperly disregarded a promising alternate suspect," Alvarez sought to elicit testimony from the lead detective about a police report that identified someone other than Alvarez as a potential suspect. *Id.* at 232. The state trial court, however, had erred by precluding this line of inquiry on hearsay grounds and failing to recognize that Alvarez offered the testimony for the non-hearsay purpose of showing that law enforcement failed to conduct a proper investigation. *Id.* at 225. In doing so, we concluded, the trial court violated Alvarez's rights under the Confrontation Clause because, "by cutting off this line of questioning," the court's evidentiary rulings "effectively denied Alvarez the opportunity to develop his only defense" and "left Alvarez without any support for his theory of the case." *Id.* at 225, 231.

Here, by contrast, the District Court did not "entirely preclude[] [Rivera] from fleshing out his main defense theory." *Id.* at 232. Instead, its evidentiary ruling narrowly precluded Rivera from eliciting a single hearsay statement. The Court still permitted defense counsel to cross-examine Detective Della Rocca about "[the] investigative steps taken into whether or not the Pinkhasov attack was related to the Nektalov murder." App'x 80. Indeed, the District Court did not foreclose the possibility that Rivera could introduce the threatening phone call at a later point in the trial, noting that its evidentiary ruling "was without prejudice to [Rivera] making a more well-developed showing" as to why it survived Rule 403. App'x 71.

Moreover, when Rivera signaled that he would rest without presenting any witnesses, the District Court pressed defense counsel to explain their reasons for not developing a defense theory based on the shooting of Nektalov's cousin. In response, Rivera's attorneys represented that, notwithstanding the government's offers to help them contact witnesses implicated by the internal police report, they had "decided to forego that portion of the

10

defense case for strategic reasons." App'x 99. Thus, the record belies Rivera's contention on appeal that "[he] had no choice but to focus . . . on the credibility of the government's witnesses." Appellant's Reply 9. Instead, Rivera's attorneys repeatedly—and, by their own admission, "strategic[ally]"—declined the District Court's invitations to develop a defense theory that attacked the thoroughness of the police investigation into the Nektalov murder. App'x 99. Accordingly, we conclude that the District Court's modest restriction on Rivera's ability to cross-examine Detective Della Rocca did not violate the Sixth Amendment.

4. <u>Jury Instructions</u>

Rivera next challenges the District Court's jury charge, arguing that the Court erred when it declined his proposal to include the following language: "You may also consider a witness's earlier silence or inaction that is inconsistent with his or her courtroom testimony to determine whether the witness has been impeached." App'x 118.

We review challenged jury instructions *de novo*, and we will not overturn a conviction "for refusal to give a requested charge unless that requested instruction is legally correct, represents a theory of defense with basis in the record that would lead to acquittal, and the theory is not effectively presented elsewhere in the charge." *United States v. Han*, 230 F.3d 560, 565 (2d Cir. 2000) (alterations omitted). Instead, the trial court has "discretion to determine what language to use in instructing the jury as long as it adequately states the law," *United States v. Alkins*, 925 F.2d 541, 550 (2d Cir. 1991), and this Court "will vacate a conviction . . . only if viewing as a whole the charge actually given, the defendant was prejudiced," *United States v. Gonzalez*, 407 F.3d 118, 122 (2d Cir. 2005) (internal quotation marks and alterations omitted).

Here, the District Court adequately instructed the jury on the subject of witness credibility. Although the District Court did not specifically state that the jury could consider a witness's earlier silence or inaction when assessing his or her credibility, it conveyed as much when it instructed the jury to "carefully scrutinize" all indicia of reliability, including, *inter alia*, "the circumstances under which each witness testified," "the impression the witness made when testifying," "the relationship of the witness to the controversy and the parties,"

11

any "evidence that, at some earlier time, witnesses have said or done something that counsel argues is inconsistent with their trial testimony," and "any other matter in evidence that may help you to decide the truth and the importance of each witness's testimony." Appx 137-38, 140. Thus, because "the substance of [Rivera's] request [was] given by the court in its own language," Rivera has "no cause to complain." *Han*, 230 F.3d at 565 (internal quotation marks omitted).

Moreover, as we have previously recognized, a district court's failure to provide complete jury instructions on the subject of cooperator-witness credibility does not constitute reversible error so long as the jury charge, together with counsel's arguments, "fairly put th[at] issue . . . to the jury." *United States v. Vaughn*, 430 F.3d 518, 523 (2d Cir. 2005); *see also United States v. Santana*, 503 F.2d 710, 716 (2d Cir. 1974) (finding no error where the trial court instructed the jury to scrutinize the testimony of the cooperating witnesses and where defense counsel "vigorously" attacked the witness's credibility through cross-examination and summation). Here, as Rivera acknowledges on appeal, his attorneys forcefully argued during cross-examination and summation that "the cooperating witnesses could not be trusted." Appellant's Br. 19. Thus, we conclude that, in light of the District Court's comprehensive jury charge and the arguments made by defense counsel at trial, the jury was sufficiently advised of the need to scrutinize carefully the credibility of the government's witnesses. The District Court did not err by declining to adopt Rivera's proposed instruction.

5. Right of Presence

Finally, Rivera argues that the District Court violated his right to be present at every stage of his trial by (1) requiring counsel to exercise their peremptory challenges in the judge's robing room, and (2) not inviting Rivera to certain sidebar conversations held during jury selection and trial. Because Rivera did not object contemporaneously to his absence from these various proceedings, we review his claim for plain error. *See United States v. Salim*, 690 F.3d 115, 124 (2d Cir. 2012) (reviewing a district court's acceptance of waiver of presence for plain error).

A criminal defendant has the right "to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." *Cohen v. Senkowski*, 290 F.3d 485, 489 (2d Cir. 2002) (internal quotation marks omitted). This right—which is codified in Federal Rule of Criminal Procedure 43(a) and "rooted in both the Sixth Amendment Confrontation Clause and the Fifth Amendment Due Process Clause"—is "not absolute," however. *United States v. Canady*, 126 F.3d 352, 360-61 (2d Cir. 1997). Instead, "it is triggered only when the defendant's presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Cohen*, 290 F.3d at 489 (internal quotation marks omitted). Furthermore, "a defendant may expressly or effectively waive the right." *Id.* at 491. Although the waiver "must be knowing and voluntary," it "can be implied from the defendant's conduct," *United States v. Jones*, 381 F.3d 114, 122 (2d Cir. 2004) (internal quotation marks omitted), and it can be inferred when the defendant has at least "minimal knowledge of the nature and purpose of the [] procedure . . . [that] he did not attend," *Cohen*, 290 F.3d at 491.

In this case, "the trial court's actions in open court gave [Rivera] sufficient minimal knowledge of the nature and purpose" of the jury selection proceedings that would take place outside of Rivera's presence. *Cohen*, 290 F.3d at 491 (internal quotation marks omitted). To begin, Rivera was present when the District Court described, in open court, its process for jury selection. The District Court explained that it would first ask prospective jurors a series of questions in open court. If a prospective juror answered "yes" to one of these questions, the District Court would invite that person to sidebar so that "[the Court] c[ould] understand more what the reason was for the yes answer." App'x 43. Neither Rivera nor his counsel objected to holding these sidebars outside of Rivera's presence. Likewise, neither objected when the District Court stated in open court that, "in about three minutes," it would ask counsel to come to the robing room to exercise their peremptory strikes. App'x 44. In light of the District Court's transparency about the jury selection proceedings that would be held outside of Rivera's presence, the District Court did not err, much less plainly err, by treating Rivera's failure to object as a waiver of his right of presence.

13

For similar reasons, we reject Rivera's claim that the sidebar conversations conducted at trial violated his constitutional rights. In his appeal, Rivera focuses on his exclusion from the *ex parte* sidebar discussion in which the District Court asked defense counsel to explain why it had not pursued further the connection between the Pinkhasov shooting and the Nektalov murder. Here again, however, the District Court put Rivera on notice of the nature and purpose of this sidebar discussion. In open court, the District Court reminded defense counsel of its earlier evidentiary ruling to exclude the threatening phone call; noted that this ruling was "without prejudice to [Rivera's] right to offer [the evidence] by other means"; and then asked defense counsel to articulate its reasons for not pursuing the issue further. App'x 97-98. In response, defense counsel explained in Rivera's presence that "[it] ha[d] decided to forego that portion of the defense case for strategic reasons." App'x 99. When pressed by the District Court for additional explanation, defense counsel requested to be heard *ex parte* at sidebar, and the District Court agreed, with no objection from the government. In light of the District Court's detailed descriptions of the nature of the upcoming sidebar conversation with defense counsel, Rivera clearly had the "minimal knowledge" required to waive his right of presence implicitly by failing to object. Accordingly, the record provides no basis for concluding that the District Court deprived Rivera of his right to be present at every stage of trial.

* * *

We have considered Rivera's remaining arguments on appeal and conclude that they are without merit. For the foregoing reasons, the District Court's judgment is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

14